Nelson **HERNANDEZ**, Plaintiff,

v.

C. **LATTIMORE**, Nathaniel Mitchell, Hugh Herbert, N. Avignone and R. Brown, Correctional Officers, Defendants.

No. 76 Civ. 5762–CLB.

United States District Court,
S. D. New York.

July 17, 1978.

Robert B. Shapiro, John Boston, The Legal Aid Society Prisoners' Rights Project, New York City (William E. Hellerstein, New York City, Atty.-in-Charge), for plaintiff.

Kent T. Stauffer, Asst. U. S. Atty., Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiff Nelson Hernandez is a federal prisoner incarcerated at relevant times at the Metropolitan Correctional Center (hereinafter "MCC"), a federal facility at 150 Park Row, New York City, and within this District. He is also known as Nelson Ralph Hernandez Avila and Hassan Abdul Haqq. Plaintiff filed this action alleging that he was deprived of his right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment, and of his right under the Fifth Amendment to be free from deprivation of liberty without due process of law.

The complaint does not expressly assert a Fifth Amendment claim, and counsel for plaintiff informed the Court that no such claim is asserted at this time. The Court, however, at a pre-trial conference with the parties stated that it would allow amendment of the complaint at trial to include the claim, and in a pre-trial memorandum and answers to interrogatories plaintiff has asserted a due process claim. The Court will address itself to such a claim in this opinion.

Subject matter jurisdiction exists under 28 U.S.C. § 1331(a). See *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

This litigation is based on allegations of events said to have occurred on the night of October 4, 1976. At that time Hernandez was incarcerated at the MCC.[1] He alleges

---

1. At the time of the alleged incident Hernandez was serving consecutive sentences of ten (10) years for bank robbery and five (5) years for conspiracy. These sentences were imposed on October 1, 1976 in the Eastern District of New York following Hernandez' plea of guilty. He was serving these federal sentences concurrently with a New York State sentence of six to 12 years imposed on April 28, 1976, on his plea of guilty to robbery in the first degree. Hernandez was arrested on the robbery charges as a result of a New York City police investigation

of the murder of two policemen on Manhattan's Lower East Side. The policemen, who regularly patrolled the area, were apparently slain when they stopped a red, 1967 Plymouth convertible—a car later discovered to be registered to Nelson Hernandez. The police found that Hernandez had recently bought five cars and had given false addresses in connection with the purchase of each. In the apartment of a girlfriend of one of the murder suspects, police found evidence leading them to believe that the murder suspects had also been in-

that he overturned a salad tray in the MCC cafeteria because a correctional officer stationed near the food service line refused to request additional silverware for him, or because the officer refused to request silverware to replace the plastic utensils that were available. After tossing the salad, Hernandez returned to his room. Soon thereafter the defendant officers, including the one who allegedly refused to request the silverware, came to Hernandez' room where they allegedly "gave him the strip-search," and escorted him, fully clothed, into an elevator, finally depositing him in a holding area on the third floor of MCC. Such holding areas are commonly considered to be used for newly-arrived prisoners who await assignment to a room, for prisoners who present disciplinary problems and for prisoners who await psychiatric evaluation.

Hernandez' complaint centers around what he alleges to have occurred in the elevator en route to the holding area. His version of the incident is that he was "punched" by defendant Lattimore while surrounded by all of the defendants, and was "kicked" by one of the other defendants. Complaint, ¶ 10. Hernandez alleges that this battery occurred without provocation or disobedience to orders on his part. He alleges resultant injuries to his face, mouth and body, as well as to his psyche. After this battery by one or more of the officers, during which he says the other officers stood by and offered no assistance to him, Hernandez claims that, while "bleeding profusely" he was deposited in the holding area where he received no medical treatment, although visited by a paramedic. Within the ensuing hour and a half, Hernandez was treated at Bellevue Hospital. Plaintiff has requested $60,-000.00 as compensatory damages and $120,-000.00 as punitive damages.

Defendants plead a general denial and the affirmative defense that they acted in good faith upon a reasonable belief that their conduct was lawful. Defendants also assert in their answer that the Court lacks jurisdiction of the subject matter and that the complaint fails to state a claim upon which relief can be granted. In addition, defendant Lattimore counterclaims that it was plaintiff who first struck him and that Lattimore acted in self-defense. Lattimore demands damages of $5,000.00 to compensate his physical and emotional injuries and $10,000.00 as punitive damages.

This action survived a prior motion to dismiss pursuant to 28 U.S.C. § 1915(d) made on the ground that Hernandez was not entitled to proceed *in forma pauperis* and had falsely represented his indigency. Familiarity with the Court's prior memorandum decision denying dismissal, dated February 7, 1978 is assumed. The Department of Justice is furnishing the defense here. However, any damages recovered by Hernandez will not be paid from public funds.

All pre-trial discovery has been completed. The parties filed with the Court stipulations of fact and evidence, proposed exhibits and requests to charge. The Court had set a trial date of June 5, 1978.

Then, by order to show cause brought May 23, 1978, and made returnable May 26, 1978, defendants moved to dismiss the federal claims for failure to state a claim upon which relief can be granted and to dismiss the pendent claims for lack of subject matter jurisdiction. Following a conference with counsel for both parties on May 25, 1978, the Court extended plaintiff's time to respond to the show cause order to May 31, 1978. The Court heard oral argument on May 31st and has considered all the papers, affidavits and briefs submitted in connection with the motion, which is being treated as if made pursuant to Rule 56, F.R.Civ.P.

volved in recent Brooklyn and Manhattan bank robberies. Hernandez was subsequently arrested on bank robbery charges in Brooklyn. See *Time,* "Anatomy of a Man Hunt," October 6, 1975, p. 48, col. 3. Prior to being held at MCC, Hernandez was at the Bronx House of Detention. He was moved to MCC on June 16, 1976 in order to stand trial on the federal bank robbery charges. He is presently incarcerated at the Auburn Correctional Facility in Auburn, New York, serving his state and federal sentences concurrently.

because matters outside the pleadings have been presented and considered. See Rule 12(b)(6), F.R.Civ.P.

▓▓▓▓ The motion must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Frankos v. LaVallee*, 535 F.2d 1346, 1347 (2d Cir.), *cert. denied* 429 U.S. 918, 97 S.Ct. 310, 50 L.Ed.2d 284 (1976). The allegations of the complaint must be accepted as true for purposes of dealing with the legal issues raised by the motion to dismiss the complaint, *i.e.*, the legal sufficiency of the complaint. *Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1957); *United States v. New Wrinkle Co.*, 342 U.S. 371, 373, 72 S.Ct. 350, 96 L.Ed. 417 (1952). All ambiguities must be resolved and reasonable inferences drawn in favor of the party against whom judgment is sought, *Heyman v. Commerce and Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975). In addition, in this Circuit, we are mindful of *Heyman's* admonition that

> "This procedural weapon [the motion for summary judgment] is a drastic device since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." *Heyman, supra* at 1320. (Citation omitted).

This is not the sort of prisoner's civil rights action where *pro se* opposition by a prisoner-plaintiff to a motion for summary judgment warrants special consideration by the Court, 6 *Moore's* Part 2, ¶ 56.17[8.–1], since Hernandez is ably represented by counsel from the Legal Aid Society Prisoners' Rights Project.

The constitutional issue presented by Hernandez is whether a person may bring an action for money damages based directly on a claim that his or her Eighth and/or Fifth Amendment rights have been violated.

The broader issue of which constitutional provisions may be a basis for an implied private remedy of damages when those pro-visions are allegedly violated has been open since the United States Supreme Court held, in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), that such a remedy is available to an individual who alleges that his or her Fourth Amendment rights have been violated. The Supreme Court has failed to explain *Bivens* or extend its broad language to alleged violations of constitutional provisions other than the Fourth Amendment, although commentators have discussed in depth the propriety of such an extension and whether it must be implied from *Bivens*. See, *e.g.*, Deveney, "The Eleventh Amendment and Federally Protected Rights," 27 Buffalo L.Rev. 57, 60, 96–7 (1978) (hereinafter referred to as *Deveney*); M. Lehmann, "Bivens and Its Progeny," 4 Hastings Const.L.Q. 531 (1977); and Dellinger, "Of Rights and Remedies: The Constitution as a Sword," 85 Harv.L.Rev. 1532 (1972) (hereinafter referred to as *Dellinger*).

The issues presented place before the Court an actual case or controversy, within our constitutional power to resolve. However, we cannot help observing at the outset that the counsel for both sides are apparently more interested in "writing law" than in recovering damages for the respective alleged victims of forcible assault whom they represent. It must be obvious that the federal correctional officers, jointly and severally charged in this matter, cannot be expected to respond to the $180,000.00 in actual and punitive pecuniary damages sought to be recovered from them individually. At the same time that counsel are pursuing this case against the officers individually, their client has, as will be discussed below, a full and adequate remedy from the fisc, under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.*, (hereinafter sometimes referred to as "F.T. C.A.").

Plaintiff suggests that the option of proceeding under either *Bivens* or the F.T.C.A. does not present alternatives without distinction. He asserts, in particular, that pu-

nitive damages are available under *Bivens*-type actions, but are not recoverable from the government in F.T.C.A. suits. See 28 U.S.C. § 2674. We do not know that punitive damages are available under *Bivens*,[2] although there seems to be no reason to assume that they are not, since assault and battery (the torts which parallel the constitutional interests asserted by Hernandez) are typical of the intentional torts for which punitive damages may be awarded provided the defendant's motives and conduct in committing the tort are sufficient to form a basis for an award of exemplary damages. *Cf. Carey v. Piphus*, 435 U.S. 247, 257, fn. 11, 98 S.Ct. 1042, 1049, fn. 11, 55 L.Ed.2d 252 (1978) punitive damages . . . awarded in a proper case under § 1983 with the specific purpose of deterring or punishing violations of constitutional rights"). However, cases cited by plaintiff in support of the availability of punitive damages in *Bivens* actions are Illinois federal district court cases not rising to the level of controlling authority here.

■ Punitive damages are awarded to deter future occurrences of the conduct complained of and to punish the wrongdoer. They are not awarded casually in tort cases where remedies are traditionally designed to compensate a plaintiff for his or her actual injuries and losses. The compensatory damages recoverable when an intentional tort has been inflicted are broader than those recoverable in instances of mere negligence. The compensatory damages in tort for battery seek to compensate the victim for an intentional invasion of his or her dignitary interest in remaining free from unpermitted violence to the person. Of course, if physical injuries also occur, those will be compensated. In cases of unintentional or negligent torts, only those actual non-dignitary injuries, such as pain and suffering, costs of medical treatment, lost earnings, etc., are generally compensable. Thus compensatory damages for intentional torts include a wider range of interests than do compensatory damages for negligent conduct. Compensatory damages for the injury to dignity which follows from an intentional blow, or even from a slander, must not be confused with, or regarded as, punitive damages. Punitive damages are traditionally awarded for the benefit of society to deter future tortious conduct by defendant or others. When so awarded, they are a windfall to the victim over and above his or her actual injuries and losses and in addition to dignitary loss already provided as part of compensatory damages. See generally, *Restatement (Second) of Torts*, Explanatory Notes, § 18, comments c. at 30–32, and g at 34. Thus, the absence of punitive damages under the F.T.C.A. cannot be said to deprive a plaintiff of a full and adequate remedy. At most it is the absence of a windfall. Even if a deterrence factor were a necessary ingredient of a full and adequate remedy, we may assume that the Government, which is liable under the F.T.C.A., will discourage its employees from future conduct violative of the Constitution and costly to the Treasury.

Furthermore, if Hernandez' version of the facts is correct, and assuming that the force used on his person was excessive and greater than that necessary to maintain control of the prisoner and prevent his escape or injury to the officers, Hernandez has a good claim for the common law tort of assault and battery, actionable under New York State law. If such an action were sued out against these defendants in the state court, the defendants would be placed in the dilemma of having to go to trial in that court, which is fully able to protect Hernandez' rights, or alternatively, as was conceded by the Assistant United States Attorney before me in pre-trial discussions, acting for defendants he could, and doubtless would, remove the state court action forthwith to this Court pursuant to 28 U.S.C. § 1442(a).

2. Webster Bivens' claims were never determined at trial after remand, since an out-of-court settlement was reached which provided for a payment of $100.00 from each defendant narcotics agent. "The mountains were in labor; a ridiculous mouse was born." Horace, *Epistles*, Bk. III, 1. 139.

If that were done, at the cost of some twenty (20) days delay, there would be undeniable jurisdiction in this Court to try a valid claim for an assault and battery in violation of New York State law. No complex issues would be presented requiring us to explore the outer limits of *Bivens, supra, Monell v. Department of Social Services of the City of New York, et al.,* —— U.S. ——, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *Turpin v. Mailet,* 579 F.2d 152 (2d Cir. 1978) (*en banc*).

For reasons of their own, apparently the plaintiff or his attorneys would prefer to use this case as a means of seeking to extend the limits of *Bivens, Monell* and *Turpin,* rather than for redressing what for purposes of this Memorandum Decision is assumed to be an unprovoked and serious forcible assault by these defendants on a federal prisoner. Hernandez also commenced another action in this district in which he filed an amended complaint in November of 1977. There he sues certain employees of the New York City House of Detention for Men, New York City and City Comptroller Goldin. Hernandez there alleges an unprovoked striking and kicking by City correctional officers. The case is still pending in this district. See, *Eco Avila a/k/a Nelson Hernandez v. David Knight, et al.,* 77 Civ. 189–MEL. Hernandez is represented in the litigation by a clinical professor at Brooklyn Law School.

■ While plaintiff has the right to proceed as he is doing, instead of litigating under the F.T.C.A. or the common law, where his right would be undeniable, the Court cannot but conclude that the resources of the Legal Aid Society, the eleemosynary institution representing Hernandez, and the efforts of the United States Attorney's Office could each be better utilized if Hernandez would either sue under the Federal Tort Claims Act, or sue out a common law claim in the state court, which, in view of his obligation to his clients, the United States Attorney would perforce remove immediately to this Court. Although the intellectual excitement of the litigation might be less, the likelihood of a collectible judgment would be far greater.

Other courts, relying on *Bivens,* have implied remedies for cases arising under constitutional provisions other than the Fourth Amendment. Those cases have been collected in *Turpin v. Mailet, supra.*

Although *Turpin* states in *dicta* that *Bivens* supports a finding that "damages [can] flow from injuries caused by an invasion of other constitutional provisions," any analysis of *Turpin* must begin with the precise holding of the majority in that case. That is that a municipality will be liable in damages for the unlawful acts of its employees in violation of the Fourteenth Amendment if the employees' actions are authorized, sanctioned or ratified by municipal officials or bodies functioning at a policy-making level. *Turpin* at 168.

Until *Monell* was announced by the Supreme Court, one day after the *Turpin* decision the City of West Haven, appellee in *Turpin,* could not be sued under 42 U.S.C. § 1983.[3] A direct cause of action against the City, implied under the Fourteenth Amendment was the only available remedy. Thus, *Turpin* was decided in the context of no other available remedy against a municipality. If *Turpin* had been decided one or two days later, and after *Monell,* the reliance on *Bivens* would have been uncalled for. Expressed differently, the reasoning of the majority in *Turpin* assumes the continued vitality of *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), overruled the next day in *Monell.*

The *Monell* opinion in the Supreme Court adds nothing to plaintiff's attempt here to extend *Bivens. Monell* itself, at the very end of the majority opinion, cites *Bivens* merely by way of analogy (using the prefix "*Cf.*") rather than as direct support for the holding that municipalities may be sued under § 1983. See, *Monell* at 2041.

---

**3.** Until *Monell,* municipalities, under *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) were not regarded as "persons" for the purposes of § 1983. *Monell* overruled *Monroe* and found that there was "no justification for excluding municipalities from the 'persons' covered by § 1 [of the Civil Rights Act of 1871, 42 U.S.C. § 1983]." *Monell* at 98 S.Ct. 2041.

Since the precise holding of *Turpin* concerns municipalities being sued under the Fourteenth Amendment, the general discussion about extension of *Bivens* for violations of other constitutional provisions such as the instant case, not involving state action, is *dicta.* In fact, the *Turpin* majority expressly observes that it does not decide the "appropriateness of damage remedies for violations of other constitutional interests" and that such an issue "must await decision in future cases presenting those issues squarely." *Turpin* at 164, fn. 33. Plaintiff cannot rely on this general discussion to support his contention that a *Bivens* remedy is available in his case.

In addition, *Turpin's* right to be free from unlawful arrest, protected by the Fourth Amendment and secured as against the states by the Fourteenth Amendment, is sufficiently analogous to *Bivens'* right to be free from unlawful searches and seizures under the Fourth Amendment so that *Turpin* need not be viewed at all as an *extension* of *Bivens*, but merely the application to state officials, *a fortiori*, of a pre-existing remedy against federal officials for closely similar misconduct.

That *Turpin* must be limited to its facts is specifically directed by the *Turpin* majority, for the court, in the fashion of Scarlett O'Hara expressly reserved for tomorrow consideration of the availability of damage remedies for violations of other constitutional provisions.[4] *Turpin* at 164, fn. 33. In the same footnote, the Court cited, with approval, the recent Fifth Circuit case of *Davis v. Passman*, 571 F.2d 793 (1978), in which damage remedies were denied to a discharged federal employee who alleged that her *Fifth Amendment due process rights* were violated by the discharge.

■ The Federal Tort Claims Act, of course, provides the very remedy that Mr. Hernandez seeks, and which was not then available to Webster Bivens—money dam-

ages. Section 2680(h) thereof specifically provides that suits alleging, *inter alia,* assault and battery may be brought against the United States for acts or omissions of its investigative or law enforcement officers. Federal correctional officers are within the statutory definition of investigative or law enforcement officers. See, 18 U.S.C. § 3050. Although the F.T.C.A. did exist when *Bivens* was decided, suits thereunder for intentional torts were not then allowed. Now, of course, such suits are allowed. It is an entirely different matter to "relegate" a plaintiff to a state law remedy, as the *Bivens* court refused to do, than to require a plaintiff to exercise his *federal* statutory remedy. The *Bivens* language that a remedy, to be implied, need not be indispensable or necessary was made in the context of *no existing federal remedy.* At least two of the commentators cited *supra,* p. 766, hold the opinion that *Bivens* may be extended to any other constitutional provisions which provide "substantive protection to an individual in a certain situation *and no other remedy fully vindicates that right or effects that protection . . ."* *Deveney, supra,* at 97. See also, *Dellinger, supra* at 1549. *Dellinger* states further that the proposition that courts should create only those indispensable "constitutionally based remedies . . . is a normative proposition that the Court should defer in advance to Congress wherever the latter has any discretion to choose among alternative remedial schemes." *Id.* For Hernandez, there is an existing federal remedy that protects the rights he asserts.

Defendant's motion to dismiss the complaint is granted. The pendent state claims and counterclaims are dismissed, without prejudice. Because the Court determines that the *Bivens* doctrine does not extend to claims of the sort here pleaded, under the Eighth and/or Fifth Amendments,[5] we do

---

4. Of course, claims based on other constitutional provisions or on state law were not before the *Turpin* court.

5. This statement of principle is limited to the facts claimed here. Obviously there could be

imagined a hypothetical set of facts in which the Fifth and/or Eighth Amendment rights of a person could be violated, and yet the claim not actionable under the F.T.C.A. Then it will be time enough to revert to an extension of *Bivens*.

not determine defendants' second basis for dismissing the complaint, *i.e.*, that the facts alleged in the complaint do not plead a violation of the Eighth Amendment. Nor need we determine plaintiff's motion, filed May 22, 1978, to preclude defendants from introducing certain exhibits and testimony at trial.

Summary judgment is granted in favor of defendants. The Clerk shall enter a final judgment pursuant to Rule 58, F.R. Civ.P. No costs.

So Ordered.