Earl METTS, Jr., et al.,
Plaintiffs-Appellants,

v.

CLARK OIL & REFINING CORPORA-
TION, Defendant-Respondent.

No. 41610.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 16, 1981.

James R. Wyrsch, Kansas City, for plaintiffs-appellants.

Frank Hamsher, St. Louis, for defendant-respondent.

WEIER, Judge.

Plaintiffs appeal from a judgment of the trial court in favor of defendant Clark Oil & Refining Corporation. Plaintiffs were sixteen dealers and former dealers who leased gasoline service stations from Clark. They alleged in six counts of their first amended petition violation of the Missouri Antitrust Law, §§ 416.011 through 416.161, RSMo 1978, as well as common law counts of misrepresentation, economic coercion, breach of contract, interference with business and violation of fiduciary duty. Plaintiffs sought with other relief, treble damages, punitive damages and an injunction preventing Clark from competing with its own dealers and attorney's fees.

Count I of plaintiffs' first amended petition alleges that Clark, other persons and plaintiffs themselves, beginning at a date unknown to plaintiffs and continuing at least up to the date of the filing of the first amended petition, January 4, 1977, engaged in unlawful contracts, combinations and conspiracies in unreasonable restraint of trade in violation of § 416.031(1), RSMo 1978. Count I also alleges that these same parties engaged in acts to monopolize, to attempt to monopolize and to conspire to monopolize trade or commerce in the State of Missouri and in St. Louis County, Missouri, in violation of § 416.031(2), RSMo 1978. Specifically, plaintiffs allege that Clark was attempting to drive them out of business by competing with them in order to convert the plaintiff dealers' stations into company-operated stations. The dealers set forth that company stations competed with them by charging too low a retail price for gas and that the tank-wagon (wholesale) price set by the company for dealer stations was too high for them to compete effectively. The five other counts of plaintiffs' first amended petition restate the antitrust violations as well as setting forth their common law claims.

Clark is an independent gasoline refiner and marketer with more than eighteen hundred stations in thirteen states. Clark operates a dual distribution system by selling gasoline at retail through company-owned stations and as a distributor to dealers who

sell at retail to consumers. At time of trial there were sixty-four Clark stations in St. Louis City and County. Forty-two of these stations were company operated while twenty-two were independently operated by dealers.

Clark dealer and company-operated stations are similar in appearance. Stations operated by Clark utilize employees paid by Clark, offer products in addition to gasoline determined by Clark, sell gasoline and other items at prices determined by Clark and are in all other respects controlled by Clark. Stations run under lease by dealers such as plaintiffs are independent businesses. Each dealer-lessee sells Clark brand gasoline and other products. Dealers hire and pay their own employees. Products other than gasoline are selected by the dealer and all prices are independently determined by the dealer.

The case was tried to the court. Testimony in plaintiffs' case was taken from Eugene Bowling, a plaintiff, and Clark's St. Louis District Manager Richard Heinicke. Objections to plaintiff Bowling's damage testimony and exhibits were sustained. Because of the large number of plaintiffs in this action, all parties agreed that direct and cross-examination of each of the plaintiff dealers would be submitted in written exhibit form subject to evidentiary objections. At the conclusion of evidence on behalf of the plaintiffs, the trial court sustained defendant's motion for judgment in favor of defendant on all six counts of plaintiffs' first amended petition.

Plaintiffs assign fifteen points of trial court error. Our scope of review in a court-tried case has been defined as follows: "[J]udgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 [1] (Mo. banc 1976).

Plaintiffs' first point on appeal contends there was substantial evidence to show that defendant combined, conspired and contracted in restraint of trade or commerce in violation of § 416.031(1), RSMo 1978. This section is analogous to and derived from § 1 of the Sherman Act, 15 U.S.C.A. § 1. Section 416.141 of Missouri's Antitrust Statutes requires that §§ 416.011 to 416.161 be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes. This provision of the Missouri Antitrust Act was intended to provide a ready body of precedent for interpreting state antitrust statutes and a single standard of business conduct already known and acquiesced in by businesses in the state. *Fischer, Spuhl, Herzwurm and Associates, Inc. v. Forrest T. Jones & Company*, 586 S.W.2d 310, 313 [2] (Mo. banc 1979).

Section 416.031(1) requires the existence of a contract, combination or conspiracy. Consequently, before reaching the issue of whether Clark engaged in an unreasonable restraint of trade plaintiffs face the threshold requirement of identifying a co-conspirator who agreed with Clark to inflict injury on plaintiffs. *H & B Equipment Company v. International Harvester Company*, 577 F.2d 239, 243 [3] (5th Cir. 1978). Unilateral conduct does not provide a basis of liability; concerted action must be alleged and proven. *Petroleum for Contractors, Inc. v. Mobil Oil Corp.*, 1978–2 Trade Cases 75,077,080 [¶ 62,151] (S.D.N.Y.1978).

In plaintiffs' first amended petition the following parties were alleged to be co-conspirators: all independent Clark dealers; Vickers Oil Company and Shell Oil Company, who allegedly supplied gasoline to Clark; Dolgin's Candy and Tobacco Co., Inc., who sold cigarettes to Clark; J. D. Street, who packaged and supplied motor oil and related products for Clark and its dealers; Owens Oil Company a Clark retail operation under a different name; Local 618 of the Teamsters Union whose membership included Clark station employees and Commercial Cartage Company, who delivered gasoline to Clark stations. Although not pleaded, plaintiffs argue in their brief

that Clark employees and customers were also co-conspirators.

▮ A review of the voluminous record and plaintiffs' cumbersome brief does not support the contention that Clark conspired with any of the preceding parties. Plaintiffs contend that the necessary combination or conspiracy may be found in the first instance between defendant, plaintiffs and other dealers who went out of business. Plaintiffs contend that the dealers were involved in the conspiracy as unwilling parties. In support of this position plaintiffs cite three cases decided by the United States Supreme Court: *Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); *Simpson v. Union Oil Co. of California*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964); and *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). In *Albrecht* and *Simpson*, the Supreme Court held that the combination requirement of § 1 of the Sherman Act was satisfied by plaintiff's unwilling compliance with defendant's resale price suggestions forced on them by defendant's coercive action. In *Perma Life Mufflers*, the court held that unwilling compliance by plaintiffs with a restrictive sales agreement entered into with defendant, which barred plaintiffs from purchasing from other competing suppliers, prevented them from selling outside a designated territory, tied the sale of mufflers to the sale of other products of defendant, and required them to sell at a fixed retail price, constituted a combination within the meaning of § 1.

This theory, however, is not applicable to the present case. In *Albrecht, Simpson* and *Perma Life Mufflers*, the plaintiffs were unwilling participants in the alleged illegal activity; the plaintiffs acted jointly with the defendants and thus were an integral part of the illegal scheme. *Quigley v. Exxon Company U.S.A.*, 376 F.Supp. 342, 349 [2–5] (M.D.Pa.1974). In the present case the evidence clearly established that Clark dealers were allowed to set their own retail price for gasoline. There was no consistency in retail prices among dealers. Clark dealers were also permitted to purchase cigarettes, motor oil and other miscellaneous items from parties other than Clark. Clark dealers were also allowed to purchase gasoline from other oil companies if they expended a certain amount of capital and no longer exhibited the Clark trademark. Clark charged its dealers set tank-wagon prices but there was no evidence to show it improperly set its prices. The mere buying of gasoline at a wholesale price from Clark does not make the dealers participants in the setting of that price.

▮ Neither does the record support plaintiffs' contention that Clark conspired with companies who supplied or delivered products to Clark. Plaintiff Bowling admitted that he was unaware of any facts linking any other person or firm to anything he accused Clark of doing. As far as a conspiracy between Clark and its employees is concerned, the general rule holds that a corporation cannot conspire with its own employees. If an agreement between a corporation and an employee could be a conspiracy under the Sherman Act or § 416.-031(1), the plurality requirement would lose all meaning. *H & B Equipment Company, supra* at 244 [6]. An exception to this general rule exists when an employee has an independent personal stake in achieving the object of the conspiracy. *Coleman Motor Co. v. Chrysler Corporation*, 525 F.2d 1338, 1345 [1, 2] (3rd Cir. 1975). In *Coleman Motor, supra*, the co-conspirators were managers of factory dealerships which were separately incorporated. Without such an organization legally distinct from the principal defendant, it would be impossible for an employee to have an interest that was truly independent. *H & B Equipment Company, supra* at 244. Consequently, Clark's employees, having no such independent personal stake in achieving the object of the alleged conspiracy, could not have conspired with Clark. The court's finding that no acts of Clark or any other person were

shown by the evidence to prove a conspiracy is supported by the record.

Having found that plaintiffs did not prove the initial requirement of a conspiracy under § 416.031(1), it is unnecessary that we deal with plaintiffs' contention that Clark engaged in an unreasonable restraint of trade.

Plaintiffs' second point on appeal contends that Clark Monopolized, attempted to monopolize and conspired to monopolize trade or commerce in Missouri in violation of § 416.031(2), RSMo 1978. This section is analogous to § 2 of the Sherman Act, 15 U.S.C.A. § 2. Under the directive of § 416.141, RSMo 1978, we look to federal court cases interpreting § 2 of the Sherman Act.

The offense of monopoly under § 2 has two elements: (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–571, 86 S.Ct. 1698, 1703–1704, 16 L.Ed.2d 778 (1966). Monopoly power is the power to fix prices and to exclude competition. *United States v. DuPont & Co.*, 351 U.S. 377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956). The attempt offense also has two elements: (1) specific intent to accomplish the illegal result, and (2) a dangerous probability of success. *Spectrofuge Corporation v. Beckman Instruments, Inc.*, 575 F.2d 256, 276 (5th Cir. 1978); *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 478 F.Supp. 243, 268 [23] (E.D. Pa.1979), *aff'd*, 637 F.2d 105 (3rd Cir. 1980).

These various monopolization offenses require proof of a relevant market in which to test a defendant's ability to lessen or destroy competition. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965). The United States Supreme Court held in *Dupont, supra*, that charges regarding actual or would-be monopolization " . . . must be appraised in terms of the competitive market for the product. Determination of the competitive market for commodities depends on how different from one another are the offered commodities in character or use, how far buyers will go to substitute one commodity for another." *DuPont, supra* 351 U.S. at 393–394, 76 S.Ct. at 1006–1007. The relevant market is "composed of products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *Id.* at 404, 76 S.Ct. at 1012.

Defining the boundary of the relevant market is a threshold requirement in determining whether a defendant has violated § 2. *Sweeney, supra* at 268; *Spectrofuge, supra* at 276. The relevant market has two dimensions—a product market and a geographic market.

In the present case plaintiffs contend that the relevant geographic market was St. Louis City and County and the relevant product market was Clark gasoline. The trial court, in its findings of fact and conclusions of law, held that the evidence did not support plaintiffs' allegations that Clark gasoline in St. Louis City and County constituted a separate relevant market. The trial court found that gasoline stations of all brands in the St. Louis metropolitan area constituted the relevant market and that direct competition between stations selling other brands was confined to a short distance of a mile or less from each Clark station. The trial court also found that the dealers had admitted they had been in competition with other brands of gasoline sold at other stations in their immediate vicinity and that the dealers competed directly and substantially only with nearby stations of other brands.

There is substantial evidence and lack of evidence in the record to support the trial court's findings. Plaintiffs did not offer any expert testimony with respect to the

product or geographic market. Statements by dealers that Clark gasoline constituted the relevant market are not persuasive. By necessity, definition of "market" must also focus on the attitudes and reactions of consumers. *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 551 [2] (1st Cir. 1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975). But consumers did not testify.

The dealers testified that they did in fact compete with other brands of gasoline sold in stations within their immediate vicinity. The evidence of the existence and display of the Clark trademark is likewise not evidence of the existence of a separate market. See *Sweeney, supra* at 270. A manufacturer has a natural monopoly over his own products, especially when the products are sold under trademark. Unless the manufacturer, however, uses his natural monopoly to gain control of the relevant market in which the products compete, the anti-trust laws are not violated. *Id.* at 271. Based on this record, this court is led to the conclusion that Clark gasoline does not represent a separate product market for purposes of § 416.031(2), RSMo 1978. Gasoline is a fungible commodity. Competition is in the market place and cannot be restricted as suggested by plaintiffs. *Sweeney, supra* at 269; *Mullis v. Arco Petroleum Corporation*, 502 F.2d 290, 296 [7] (7th Cir. 1974).

Plaintiffs contend, however, that if this court does not find Clark gasoline to be a separate market, then Clark gasoline has been established as a relative submarket under *Brown Shoe Co. v. United States*, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962). A submarket was described there as follows:

> "[W]ithin this broad market, well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes. (Citations omitted.) The boundaries of such a submarket may be determined by examining such practical indicia as industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Brown Shoe, supra* at 325, 82 S.Ct. at 1524.

Plaintiffs have failed to show any unique product characteristic of Clark gasoline or any of the other factors enumerated in *Brown Shoe, supra*, to establish a relevant submarket for antitrust purposes. Having failed to prove the threshold requirement of a relevant market or submarket, plaintiffs' monopoly claims are without merit and must be denied. Plaintiffs' charge that Clark conspired to monopolize in violation of § 416.031(2) must likewise fail because the evidence introduced to establish a conspiracy to violate § 416.031(2) is the same as that offered to establish a conspiracy to violate § 416.031(1). Having found no conspiracy under § 416.031(1), plaintiffs' conspiracy claim under § 416.031(2) must fail.

We next turn to the contentions of the plaintiffs that the trial court erred in holding plaintiffs had failed to carry their burden of proof on their common law claims of misrepresentation, breach of contract, interference with business and violation of fiduciary duty. On appeal plaintiffs abandon their allegation that Clark committed "economic coercion" which was contained in Count III of their first amended petition. The first numbered paragraph of each of the supposed common law counts of the first amended petition specifically includes all the allegations of Count I, thus realleging conspiracy, attempt to monopolize and monopolization in violation of the Missouri Antitrust Law. The prayer in each of the counts asks that Clark be adjudged to be in violation of § 416.031 of the Missouri Antitrust Law, that treble damages, punitive damages and attorney's fees be assessed against Clark, and that the court grant injunctive relief against statutory antitrust violations. It is well settled in this state

that plaintiffs will not be heard to advance and this court will not entertain a theory of recovery on appeal different from that relied upon at the trial level. *Sydney v. Coca-Cola Company*, 569 S.W.2d 11, 12 [1, 2] (Mo.App.1978). It is necessary, therefore, that plaintiffs' theory or theories of recovery at the trial court level must first be determined. *Id.* at 12. The theory of a case is framed by the pleadings either as drawn or as amended by the evidence. *State ex rel. Conaway v. Consolidated School District No. 4 of Iron County*, 417 S.W.2d 657, 659 (Mo. banc 1967).

A thorough examination of plaintiffs' first amended petition leads this court to conclude that plaintiffs' theory in the court below was based on statutory antitrust violations. The allegations of misconduct on the part of Clark contained in the common law counts are included in Count I. Further, the relief sought in each count is relief appropriate to that sought in an antitrust action. The prayer may be considered in ascertaining the type of action attempted to be set forth by the pleader. *Sears v. Norman*, 543 S.W.2d 300, 302 [2] (Mo.App.1976). The trial court found that "each of the remaining counts (other than Count I) reiterates the allegations of the antitrust petition and *attempts* (emphasis added) to state further claims for misrepresentation, economic coercion, breach of contract, interference with business and violation of fiduciary duty. Relief based upon alleged antitrust violations is sought in each count."

Our previous disposition of Count I (antitrust violations) also applies to Counts II through VI if they are merely restatements of Count I. Assuming, however, that some common law claims are stated in the petition, we fail to find evidence to sustain plaintiffs' contentions that the court erred in sustaining defendant's motion at the close of plaintiffs' case on the ground the facts in evidence failed to sustain plaintiffs' claims. We therefore consider briefly the sufficiency of the evidence on the common law counts.

Under the heading of misrepresentation, plaintiffs contend they presented evidence they had no knowledge of Clark's below-cost pricing at company stations while at the same time they were told by the company's district manager that the company would not compete with its dealers. The facts in the case indicated that the company stations were not actually competing with the dealer-operated stations but were having to compete with other petroleum companies who were much nearer to the company-operated stations than the dealer stations. Another statement by the company vice president that Clark was dedicated to successful operation of stations by its dealers was not shown in any way to be false or misleading. In short, the plaintiffs fail to make a case of fraud or misrepresentation against the defendant.

The same lack of evidence applies to a claim of breach of contractual obligation which was apparently based upon a legal theory of "implied covenants" to deal fairly and in good faith.

The same general attack is used by plaintiffs on appeal with regard to the claims of tortious interference of business and the breach of fiduciary duty. In these as in the other contentions, there is a failure to indicate error on the part of the trial court with specific recitals of specific proof and the law applicable to that proof. It is obvious that plaintiffs have overlooked the cardinal principle in appellate briefing of specificity with references to the record on appeal. Our uncharted excursion into the voluminous record itself has not indicated in any manner where the court below failed to consider overwhelming evidence or misinterpret the law. We are left only with the inescapable conclusion that the plaintiffs failed to make a case on any one of the theories which they advanced in their pleadings and expanded upon in their proof.

In addition to the points on appeal already discussed in this opinion, plaintiffs

assign error to the following findings and actions of the trial court. First, the trial court's holding that Earl Metts and Curtis Marshall were estopped from raising any claims contained in the first amended petition as a result of the general releases they executed when relinquishing their gasoline stations. Second, the trial court's finding that Clark was engaged in "good faith" competitive activity as this is no defense to a Missouri antitrust action. Third, the trial court's denial of injunctive relief to recover costs and attorney's fees because plaintiffs were not barred by reason of any misconduct on their part. Fourth, the trial court's refusal to admit certain evidence: to-wit; evidence based on Clark's internal accounting figures that Clark would have made more money if they had operated their company stations as dealer stations, statements made by certain Clark employees concerning Clark's intent in converting dealer stations into company-operated stations, and a Report of the Sub-Committee on Energy and Environment of the Committee on Small Business, United States House of Representatives, entitled "Problems of Small Retail Petroleum Marketers" dated October 20, 1976.

We have reviewed these other contentions of error but find nothing that would change our disposition of the case.

Although defendant's motion to strike appellants' brief is meritorious, we have decided the appeal on its merits and hence deny the motion.

The judgment is affirmed.

PUDLOWSKI, P. J., and GUNN, J., concur.