75 F.Supp.2d 1003 (1999)
George WILES, d/b/a Arcadia Valley Office Supply, Plaintiff(s),
v.
CAPITOL INDEMNITY CORPORATION, et al., Defendant(s).
No. 4:99CV1280 JCH.
United States District Court, E.D. Missouri, Eastern Division.
October 21, 1999.
*1004 Arthur G. Muegler, Jr., St. Louis, MO, for Plaintiff.
Robert W. Cockerham, Senior Associate, David W. Cooper, Brown and James, P.C., St. Louis, MO, for Defendants.

MEMORANDUM AND ORDER
HAMILTON, Chief Judge.
This matter is before the Court on Defendants' Joint Motion to Dismiss Defendants Brown & James, P.C. ("Brown & James") and Nixon & Company, Inc. ("Nixon") for Fraudulent and Pretensive Joinder and Motion for Sanctions, filed September 13, 1999. (Doc. No. 16). Also pending is Plaintiff's Motion to Remand Case to State Court, filed August 23, 1999. (Doc. No. 11). Plaintiff originally filed this lawsuit in the Circuit Court of the City of St. Louis, State of Missouri. The Petition contains five counts. (Petition, attached to Doc. No. 1 as Exh. 1). Only Count I, Plaintiff's claim of civil conspiracy, contains specific allegations against the domestic Defendants, Brown & James and Nixon.[1] (Petition, ¶¶ 1-25). The next three counts allege fraud, breach of contract, and vexatious refusal to pay against Defendant Capitol Indemnity Corporation ("Capitol Indemnity"), and the last seeks a declaratory judgment. (Petition, ¶¶ 26-51).
The underlying controversy in this matter arises out of an insurance contract entered into between Plaintiff and Defendant Capitol Indemnity. In Count I, Plaintiff alleges that Capitol Indemnity entered into a civil conspiracy with its adjusters, Nixon & Company, and the law firm of Brown & James. Specifically, Plaintiff alleges that Capitol Indemnity, Nixon, and Brown & James unlawfully conspired to pay Capitol Indemnity's insureds less than the contracted indemnification amounts. (Petition, ¶ 10). Plaintiff asserts that Defendants utilized various means to accomplish this objective, including: (a) threatening or effecting denial of the insured's claim on the pretextual ground that the insured forfeited his insurance contract benefits due to an alleged fraudulent overstatement of the claim or arson; (b) threatening or effecting denial *1005 of the insured's claim on the pretextual ground that the insured forfeited his insurance contract benefits due to an alleged fraudulent misrepresentation in an insurance application proof of loss, or examination under oath; (c) repeatedly changing representatives during the claims adjustment process, in order to delay final adjustment of the claim with the intent to frustrate the insured into accepting less than the contracted indemnification amount; (d) harassing the insured by demanding unnecessary property inspections, statements under oath, bills, receipts, proofs of loss, etc., with the intent to frustrate the insured into accepting less than the contracted indemnification amount; and (e) taking control of the loss site immediately after the loss event, in order to remove damaged and undamaged items and thus prevent the insured from accurately assessing his total loss from the occurrence.[2] (Petition, ¶ 10). Plaintiff alleges that Nixon and Brown & James entered this conspiracy each for its own benefit, rather than for the benefit of Capitol Indemnity. Specifically, Plaintiff alleges that Nixon and Brown & James stood to gain by "receipt of fee/wage compensation fees [for the sole use and benefit of Brown & James, Cockerham and Nixon personally and not as agent for Insurance Company]". (Petition, ¶ 10 (brackets in original)).
The immediate controversy in this case surround Defendants' removal of the matter to this Court. Defendants removed the action despite the lack of complete diversity on the face of the Petition.[3] Defendants assert that despite the apparent lack of diversity, removal is proper in this case as Plaintiff fraudulently joined the domestic Defendants for the sole purpose of defeating diversity. Plaintiff conversely alleges that he has stated a colorable claim of civil conspiracy against the domestic Defendants, and thus removal of this matter was improvident.
Title 28 U.S.C. § 1441(b) allows a defendant who meets certain requirements to remove a civil action from state court to federal court on the basis of diversity of citizenship. "The requirement of complete diversity is fully applicable to cases removed on the basis of diversity." Reeb v. Wal-Mart Stores, Inc., 902 F.Supp. 185, 186 (E.D.Mo.1995) (citation omitted). A federal court will not, however, allow removal to be defeated by the collusive or fraudulent joinder of a resident defendant. Id. at 187, citing Anderson v. Home Ins. Co., 724 F.2d 82, 83 (8th Cir.1983). Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact or law supporting the claim against the resident defendant, or when the reviewing court finds that the plaintiff has no real intention of prosecuting the action against the resident defendant. Reeb, 902 F.Supp. at 187 (citations omitted). The burden of proof rests with the removing party. Parnas v. General Motors Corp., 879 F.Supp. 91, 92 (E.D.Mo.1995) (citations omitted).
Missouri recognizes the general rule of agency law that a principal cannot conspire with one of its own agents. See Metts v. Clark Oil and Refining Corp., 618 S.W.2d 698, 702 (Mo.App.1981). This rule derives from the legal impossibility of a "meeting of the minds" between two entities which are not legally distinct. See Macke Laundry Serv. Ltd. Partnership v. Jetz Serv. Co., Inc., 931 S.W.2d 166, 176 (Mo.App.1996) (citation omitted). Missouri also recognizes a limited exception to this general rule, as follows: "an agent can be liable for conspiracy with the principal if the agent acts out of a self-interest which goes beyond the agency relationship." Id. at 176 (citations omitted). Moreover, in "exceptional circumstances", an attorney may be liable even though he is acting within the scope of the attorney-client relationship, under the general principles *1006 of law governing attorney liability. Id. at 176.
The "exceptional circumstances" test applied in Missouri was discussed at length in Macke. The Macke court pointed out that an attorney may be liable for a civil conspiracy with his client when he acts beyond his conditional or qualified privilege as an attorney by, for example, committing fraud, collusion or a malicious or intentionally tortious act. Id. at 177 (citation omitted). In discussing the consistency of the exceptional circumstances test, as applied in Missouri, with the agency law of other jurisdictions, the Macke court noted cases which required that the attorney act for his sole personal benefit rather than the benefit of his client, that he participate actively in a fraud, or that he act with actual malice or a desire to harm. Id. at 178 (citations omitted). In a footnote, the Macke court noted that "[t]he fact that the attorney has been or will be paid legal fees for representation of the attorney's client does not meet this standard." Id. at 178, n. 4 (citation omitted).
Upon consideration, the Court finds the acts Plaintiff alleges Brown & James committed in furtherance of the "conspiracy" to be merely those any attorney would reasonably perform in the course of representing his client. Further, the only personal benefit Plaintiff alleges Brown & James derived from the conspiracy was "the receipt of fee/wage compensation fees" which, as noted above, is insufficient to demonstrate that Brown & James was acting for its sole personal benefit rather than the benefit of its client. According Brown & James the appropriate privilege to represent its client as it sees fit, the Court finds that, on the face of his Petition, Plaintiff fails to allege any acts or benefits going beyond the ordinary scope of the agent-principal relationship existing between Brown & James and Capitol Indemnity. The Court thus finds that Brown and James was fraudulently joined in this action, and its Motion to Dismiss will therefore be granted.
Close examination of the Petition similarly reveals that Plaintiff fails to allege any action in furtherance of the conspiracy by Nixon which can be said to have advanced Nixon's sole personal benefit. An agent does not become liable for conspiracy simply because it accepts payment from its principal for acts performed within the scope of the agency, even if the principal's ultimate design is alleged to have been tortious. In reviewing Plaintiff's allegations against Nixon with these standards in mind, the Court finds that they fail to state a claim for civil conspiracy under Missouri law. Defendant Nixon's Motion to Dismiss will therefore be granted as well.
Accordingly,
IT IS HEREBY ORDERED that Defendants' Joint Motion to Dismiss Defendants Brown & James, P.C. and Nixon & Company, Inc. for Fraudulent and Pretensive Joinder (Doc. No. 16) is GRANTED.
IT IS FURTHER ORDERED that Defendants' Motion for Sanctions (Doc. No. 16) is DENIED.
IT IS FURTHER ORDERED that Plaintiff's Motion to Remand Case to State Court (Doc. No. 11) is DENIED.
NOTES
[1] In his Petition, Plaintiff alleges that Defendant Capitol Indemnity is a Wisconsin corporation, while Defendants Nixon and Brown & James are both Missouri corporations. (Petition, ¶¶ 2, 4, 6).
[2] Defendants Nixon and Brown & James are alleged to have participated in only some of these procedures. (Petition, ¶ 10).
[3] As stated above two of the Defendants, Nixon and Brown & James, are alleged to be Missouri corporations.