# WALKER PROCESS EQUIPMENT, INC. *v.* FOOD MACHINERY & CHEMICAL CORP.

No. 13.   Argued October 12–13, 1965.—Decided December 6, 1965.

*Charles J. Merriam* argued the cause for petitioner. With him on the briefs were *Edward A. Haight* and *Louis Robertson.*

*Sheldon O. Collen* argued the cause for respondent. With him on the brief were *R. Howard Goldsmith, Charles W. Ryan* and *Lloyd C. Hartman.*

*Daniel M. Friedman* argued the cause for the United States, as *amicus curiae,* urging reversal. On the brief were *Assistant Attorney General Orrick* and *Robert B. Hummel.*

MR. JUSTICE CLARK delivered the opinion of the Court.

The question before us is whether the maintenance and enforcement of a patent obtained by fraud on the Patent Office may be the basis of an action under § 2 of the Sherman Act,[1] and therefore subject to a treble damage claim by an injured party under § 4 of the Clayton Act.[2] The respondent, Food Machinery & Chemical Corp. (hereafter Food Machinery), filed this suit for infringement of its patent No. 2,328,655 covering knee-action swing diffusers used in aeration equipment for sewage treatment systems.[3] Petitioner, Walker Process Equip-

---

[1] 26 Stat. 209, 15 U. S. C. § 2 (1964 ed.):
"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor . . . ."

[2] 38 Stat. 731, 15 U. S. C. § 15 (1964 ed.):
"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

[3] The patent in question was issued in the name of the inventor, Lannert. But he had previously assigned the patent rights to his employer, Chicago Pump Company, a division of Food Machinery.

ment, Inc. (hereafter Walker), denied the infringement and counterclaimed for a declaratory judgment that the patent was invalid. After discovery, Food Machinery moved to dismiss its complaint with prejudice because the patent had expired. Walker then amended its counterclaim to charge that Food Machinery had "illegally monopolized interstate and foreign commerce by fraudulently and in bad faith obtaining and maintaining . . . its patent . . . well knowing that it had no basis for . . . a patent." It alleged fraud on the basis that Food Machinery had sworn before the Patent Office that it neither knew nor believed that its invention had been in public use in the United States for more than one year prior to filing its patent application when, in fact, Food Machinery was a party to prior use within such time. The counterclaim further asserted that the existence of the patent had deprived Walker of business that it would have otherwise enjoyed. Walker prayed that Food Machinery's conduct be declared a violation of the antitrust laws and sought recovery of treble damages.

The District Court granted Food Machinery's motion and dismissed its infringement complaint along with Walker's amended counterclaim, without leave to amend and with prejudice. The Court of Appeals for the Seventh Circuit affirmed, 335 F. 2d 315. We granted certiorari, 379 U. S. 957. We have concluded that the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present. In such event the treble damage provisions of § 4 of the Clayton Act would be available to an injured party.

I.

As the case reaches us, the allegations of the counterclaim, as to the fraud practiced upon the Government by Food Machinery as well as the resulting damage suffered

by Walker, are taken as true.[4]   We, therefore, move immediately to a consideration of the legal issues presented.

Both Walker and the United States, which appears as *amicus curiae,* argue that if Food Machinery obtained its patent by fraud and thereafter used the patent to exclude Walker from the market through "threats of suit" and prosecution of this infringement suit, such proof would establish a prima facie violation of § 2 of the Sherman Act.   On the other hand, Food Machinery says that a patent monopoly and a Sherman Act monopolization cannot be equated; the removal of the protection of a patent grant because of fraudulent procurement does not automatically result in a § 2 offense.   Both lower courts seem to have concluded that proof of fraudulent procurement may be used to bar recovery for infringement, *Precision Instrument Mfg. Co.* v. *Automotive Maintenance Machinery Co.,* 324 U. S. 806 (1945), but not to establish invalidity.   As the Court of Appeals expressed the proposition, "only the government may 'annul or set aside' a patent," citing *Mowry* v. *Whitney,* 14 Wall. 434 (1872).   It went on to state that no case had "decided, or hinted that fraud on the Patent Office may be turned to use in an original affirmative action, instead of as an equitable defense. . . .   Since Walker admits that its anti-trust theory depends on its ability to prove fraud on the Patent Office, it follows that . . . Walker's second amended counterclaim failed to state a claim upon which relief could be granted."   335 F. 2d, at 316.

## II.

We have concluded, first, that Walker's action is not barred by the rule that only the United States may sue to cancel or annul a patent.   It is true that there is no

---

[4] See, *e. g., United States* v. *New Wrinkle, Inc.,* 342 U. S. 371, 376 (1952).

statutory authority for a private annulment suit and the invocation of the equitable powers of the court might often subject a patentee "to innumerable vexatious suits to set aside his patent." *Mowry, supra,* at 441. But neither reason applies here. Walker counterclaimed under the Clayton Act, not the patent laws. While one of its elements is the fraudulent procurement of a patent, the action does not directly seek the patent's annulment. The gist of Walker's claim is that since Food Machinery obtained its patent by fraud it cannot enjoy the limited exception to the prohibitions of § 2 of the Sherman Act, but must answer under that section and § 4 of the Clayton Act in treble damages to those injured by any monopolistic action taken under the fraudulent patent claim. Nor can the interest in protecting patentees from "innumerable vexatious suits" be used to frustrate the assertion of rights conferred by the antitrust laws. It must be remembered that we deal only with a special class of patents, *i. e.,* those procured by intentional fraud.

Under the decisions of this Court a person sued for infringement may challenge the validity of the patent on various grounds, including fraudulent procurement. *E. g., Precision Instrument Mfg. Co.* v. *Automotive Maintenance Machinery Co.,* 324 U. S. 806 (1945); *Hazel-Atlas Co.* v. *Hartford-Empire Co.,* 322 U. S. 238 (1944); *Keystone Driller Co.* v. *General Excavator Co.,* 290 U. S. 240 (1933). In fact, one need not await the filing of a threatened suit by the patentee; the validity of the patent may be tested under the Declaratory Judgment Act, 28 U. S. C. § 2201 (1964 ed.). See *Kerotest Mfg. Co.* v. *C-O Two Fire Equipment Co.,* 342 U. S. 180, 185 (1952). At the same time, we have recognized that an injured party may attack the misuse of patent rights. See, *e. g., Mercoid Corp.* v. *Mid-Continent Investment Co.,* 320 U. S. 661 (1944). To permit recovery of treble damages for the fraudulent procurement of the patent

coupled with violations of § 2 accords with these long-recognized procedures. It would also promote the purposes so well expressed in *Precision Instrument, supra,* at 816:

> "A patent by its very nature is affected with a public interest. . . . [It] is an exception to the general rule against monopolies and to the right to access to a free and open market. The far-reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope."

### III.

Walker's counterclaim alleged that Food Machinery obtained the patent by knowingly and willfully misrepresenting facts to the Patent Office. Proof of this assertion would be sufficient to strip Food Machinery of its exemption from the antitrust laws.[5] By the same token, Food Machinery's good faith would furnish a complete defense. This includes an honest mistake as to the effect of prior installation upon patentability—so-called "technical fraud."

To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would then be necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure Food Machinery's ability to lessen or destroy competition. It may be that the device—knee-action swing dif-

---

[5] This conclusion applies with equal force to an assignee who maintains and enforces the patent with knowledge of the patent's infirmity.

fusers—used in sewage treatment systems does not comprise a relevant market. There may be effective substitutes for the device which do not infringe the patent. This is a matter of proof, as is the amount of damages suffered by Walker.

As respondent points out, Walker has not clearly articulated its claim. It appears to be based on a concept of *per se* illegality under § 2 of the Sherman Act. But in these circumstances, the issue is premature. As the Court summarized in *White Motor Co.* v. *United States,* 372 U. S. 253 (1963), the area of *per se* illegality is carefully limited. We are reluctant to extend it on the bare pleadings and absent examination of market effect and economic consequences.

However, even though the *per se* claim fails at this stage of litigation, we believe that the case should be remanded for Walker to clarify the asserted violations of § 2 and to offer proof thereon. The trial court dismissed its suit not because Walker failed to allege the relevant market, the dominance of the patented device therein, and the injurious consequences to Walker of the patent's enforcement, but rather on the ground that the United States alone may "annul or set aside" a patent for fraud in procurement. The trial court has not analyzed any economic data. Indeed, no such proof has yet been offered because of the disposition below. In view of these considerations, as well as the novelty of the claim asserted and the paucity of guidelines available in the decided cases, this deficiency cannot be deemed crucial. Fairness requires that on remand Walker have the opportunity to make its § 2 claims more specific, to prove the alleged fraud, and to establish the necessary elements of the asserted § 2 violation.

*Reversed and remanded.*

Mr. Justice Harlan, concurring.

I join the Court's opinion. I deem it appropriate, however, to add a few comments to what my Brother Clark has written because the issue decided is one of first impression and to allay possible misapprehension as to the possible reach of this decision.

We hold today that a treble-damage action for monopolization which, but for the existence of a patent, would be violative of § 2 of the Sherman Act may be maintained under § 4 of the Clayton Act if two conditions are satisfied: (1) the relevant patent is shown to have been procured by knowing and willful fraud practiced by the defendant on the Patent Office or, if the defendant was not the original patent applicant, he had been enforcing the patent with knowledge of the fraudulent manner in which it was obtained; and (2) all the elements otherwise necessary to establish a § 2 monopolization charge are proved. Conversely, such a private cause of action would *not* be made out if the plaintiff: (1) showed no more than invalidity of the patent arising, for example, from a judicial finding of "obviousness," or from other factors sometimes compendiously referred to as "technical fraud"; or (2) showed fraudulent procurement, but no knowledge thereof by the defendant; or (3) failed to prove the elements of a § 2 charge even though he has established actual fraud in the procurement of the patent and the defendant's knowledge of that fraud.

It is well also to recognize the rationale underlying this decision, aimed of course at achieving a suitable accommodation in this area between the differing policies of the patent and antitrust laws. To hold, as we do, that private suits may be instituted under § 4 of the Clayton Act to recover damages for Sherman Act monopolization knowingly practiced under the guise of a patent

procured by deliberate fraud, cannot well be thought to impinge upon the policy of the patent laws to encourage inventions and their disclosure. Hence, as to this class of improper patent monopolies, antitrust remedies should be allowed room for full play. On the other hand, to hold, as we do not, that private antitrust suits might also reach monopolies practiced under patents that for one reason or another may turn out to be voidable under one or more of the numerous technicalities attending the issuance of a patent, might well chill the disclosure of inventions through the obtaining of a patent because of fear of the vexations or punitive consequences of treble-damage suits. Hence, this private antitrust remedy should not be deemed available to reach § 2 monopolies carried on under a nonfraudulently procured patent.

These contrasting factors at once serve to justify our present holding and to mark the limits of its application.