COLORTRONIC REINHARD & CO., K.
G. & Colortronic Inc., Plaintiffs,

v.

PLASTIC CONTROLS, INC. and Bruce
A. McLean, Defendants.

Civ. A. No. 77–3094–A.

United States District Court,
D. Massachusetts.

Sept. 23, 1980.

Arthur F. Dionne, Chapin, Neal & Dempsey, Springfield, Mass., for plaintiffs.

Robert J. Schiller, Schiller & Pandiscio, Waltham, Mass., for defendants.

## OPINION

ALDRICH, Senior Circuit Judge.*

This is an action brought for the infringement of two patents for metering and mixing plastic ingredients, Tschritter, No. 3,814,296, June 4, 1974, and Jakob, No. 3,985,345, Oct. 12, 1976, by the owner, Colortronic Reinhard Co., K.G., (Colortronic), a German limited partnership of which one

* Sitting by designation.

Reinhard is the chief executive officer, and Colortronic, Inc., a Washington corporation (Colortronic, U. S.), the United States representative. Colortronic owns 50% of Colortronic, U. S. One Meyer is head of the latter and Reinhard and he were hand in glove so far as this action is concerned. The defendants were Plastic Controls, Inc. (P.C.I.), and P.C.I.'s principal officer and owner, Bruce A. McLean. At the conclusion of the evidence the action against McLean was dismissed. Defendants counterclaimed, seeking a declaration of invalidity of the patents, and damages for violation of the Sherman Act, 15 U.S.C. § 2, and, by motion allowed after trial, for unfair competition. Because I find the action exceptional from the standpoint of attorneys' fees, some background is in order.

P.C.I. was at one time the exclusive sales and marketing agent for Colortronic, U. S. Following discharge and accusation of withholding funds, McLean ·sued for back pay and recovered a judgment. Plaintiffs instituted this action and appealed from McLean's judgment, but offered to settle their obligation for a small sum plus an admission by McLean of the validity of the patents. After rejection, they increased the dollar figure, but were again refused. McLean won the appeal and plaintiffs paid. Later they offered to drop the present suit, but not to admit invalidity of the patents, or to pay attorneys' fees. Defendants refused.

Defendants' total production for which the suit was brought were four machines, two of which plaintiffs assert did not function properly. Plaintiffs' total claim, apart from the requested tripling plus attorneys' fees, is $140. In addition to the paltriness of the dollar amount, P.C.I. was, according to plaintiffs' own contentions (although defendants dispute this), in such poor shape as to pose no future threat. Defendants assert that the suit was engendered out of ill feeling, to put P.C.I. out of business, and to combat McLean's justified suit for back pay. With this in mind, I turn to the merits.

■ In their responsive pleading, filed in November, 1977, defendants asserted that the patents were invalid, as having been obtained by fraud on the Patent Office. While such pleading is sometimes filed as a matter of course (in violation of the Rules), that was not this case with respect to Jakob, as plaintiffs assertedly discovered only on the eve of trial. In his 1974 application for the '345 patent Jakob, an employee of Colortronic, subscribed to the usual oath to the effect that the "invention [had not been] described in any· printed publication in any country . . . or on sale in the United States more than one year prior to this application." In point of fact, Jakob himself had written two leaflets, one a very detailed description of the device, which had been extensively distributed at the Hanover Fair in 1970. He at least participated in publishing several articles in German technical journals the year following. One had been written by Reinhard. In addition, after being on sale in Germany in 1970, the '345 device was put on sale at the National Plastics Exposition in Chicago in 1971. Both Jakob and Reinhard were present.

With this background Colortronic prosecuted the application that Jakob had signed. Colortronic was anything but a neophyte in such matters. I am abundantly persuaded that Jakob's oath was false both to his and Reinhard's, and hence to Colortronic's, knowledge at the time it was made, and was falsified for the purpose of obtaining the patent.[1] Colortronic disclaimed on the

---

1. Even were I wrong on this, and were to accept the position advanced in plaintiffs' brief, that Jakob, as was allegedly frequently the case, signed papers prepared ·for him without reading them, the most this would establish would be that someone connected with Colortronic, or patent counsel, prepared the basic declaration without consultation with Jakob, the oath taker and applicant, i. e., consciously without inquiry whether or not it was true (it being clear, on his own testimony, that, if asked, Jakob would have known it untrue). Hence, either Jakob knowingly lied, or was knowingly indifferent, or Colortronic or its counsel prepared and filed an application with reckless disregard as to its truth or falsity. This would be patent fraud (pun intended). With this history I would be doing a gross

eve of trial on advice of counsel and admitted the invalidity of the patent not because it had just learned the true facts, but because it had learned that Jakob was going to testify and counsel appreciated the predicament. I am aware of the heavy burden on defendants with respect to fraud. *Norton Co. v. Carborundum Co.*, 1 Cir., 1976, 530 F.2d 435, 444. It is fully met.

The impropriety of suing defendants on the known invalid '345 patent under these circumstances should carry over to infect the concomittant claim under the '296 patent even were that patent valid and infringed. If legally proper I would so find and hold. However, that need not be determinative. P.C.I. did not infringe the '296 patent, and I find plaintiffs must have known it did not. Claims 12 and 16, which became claims 1 and dependent claim 5 upon which suit was brought, were added with "a cover plate covering the metering chamber . . . whereby during the metering a closed . metering chamber is formed," as a result of the examiner's action and citation of Walker No. 1,664,802, April 3, 1928, and for the express purpose of avoiding it.[2] The P.C.I. device conspicuously lacks such a cover plate. It has a traverse bar supporting the gear (one of the functions of the cover plate, and equivalent to that extent), but the bar does not form a closed chamber. Partially closed is not the same thing as closed, *cf. Shields–Jetco, Inc. v. Torti*, 1 Cir., 1971, 436 F.2d 1061, particularly not in view of the estoppel.[3] Anyone with any patent experience knows that one cannot blow hot to the Patent office and cold to the public. I find that where Colortronic, in processing the patent, saved itself by emphasizing its cover plate, it must have known that it had no claim for infringement against a party who employed none. This is an extraordinarily unprepossessing case.

■ Turning to defendants' requests for affirmative relief, the '345 patent having been disposed of by the disclaimer there remains the question of validity of the '296 patent. I accept, for present purposes, the distinction over Walker effected by the cover plate. Whether the total is invention, however, is another matter. The movement and, since the spacing is fixed and predetermined, inevitably and obviously the measurement, of the additive material are effected by two eccentrically–mounted meshing gears which accept the material on one side and discharge it through an aperture on the other. Before the evidence started the court alerted plaintiffs' counsel to the desirability of having an expert because devices in common use had come to its mind as it read the patent. Counsel declined. Thereafter, on completion of his testimony, the court asked plaintiffs' witness Meyer, "In what way does the '296 patent differ from a gear pump? . . . What is the difference in principle?" To this the witness replied, "The principle is basically similar."

Plaintiffs' brief does not escape this admission by counsel's ipse dixit that the similarity is "superficial." Nor by their, again entirely unsupported, pronouncement that "a gear pump could not handle non–free flowing or kneadable material." This last is an uncommendable example of backward reasoning. The particular use does not affect the principle. A venturi is a venturi, for example, whether employed in the carburetor of a high speed motor or in a den-

disservice to the Patent laws if I could permit a free, *i. e.*, innocent, passage between the rock and the whirlpool.

2. "Applicant's device forms a closed metering chamber . . . . In Walker, no metering chamber suitable for kneadable masses is formed. The secondary references fail to set forth this missing teaching."

3. In a moment of candor plaintiffs' brief describes the bar as "an aligning arm and minor gear support." More frequently it speaks of a "cover plate (traverse bar)," as if they were equivalent in this broader respect, which clearly they are not. It is true that on direct examination Meyer sought to use the terms interchangeably, but on cross, when his attention was called to the patent, he agreed that "the cover plate had to form a part of the metering chamber." It is difficult for me to accept counsels' good faith in basing their brief on Meyer's initially attempted equivalency.

tist's device to remove a patient's saliva. Meyer accepted defendants' brochure's description of a "gear set which forces the powder to flow." This is a gear pump. Plaintiffs showed no significant departure from this common device. Counsels' assertion that "there is no need for the Plaintiff to adduce expert testimony" does not satisfy me that the '296 patent did more than find a new use. I find this was not invention, and hold the patent invalid for obviousness and lack of novelty.

Unfortunately for defendants' other claims, the evidence does not permit substantial recovery. Although they start their anti–trust claim with one leg up, so to speak, the requisite fraud being clear, *Walker Process, Inc. v. Food Machinery Co.*, 1965, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247, I am not satisfied that digitally–controlled mixers, plaintiffs' alleged preserve, rise to the dignity of a relevant market within the meaning of the Sherman Act. This is a far less comprehensive situation than defendants' cited case of attempting to corner all hydraulic oil well pumps. *Kobe, Inc. v. Dempsey Pump Co.*, 10 Cir., 1952, 198 F.2d 416, *cert. denied*, 344 U.S. 914, 73 S.Ct. 46, 97 L.Ed. 651. Obviously there are other types of mixers and measurers that differ relatively little from plaintiffs' even if plaintiffs' were the best.[4] At the least there is a substantial burden on defendants, and I do not find it met. By the same token, I do not find evidence on which to base even an inference of a bad, monopolistic, intent.

For unfair competition, however, defendants have made out a substantive case. I find plaintiffs were malicious in both the legal and lay sense, and were trying by this lawsuit improperly to repress defendants when defendants were in poor shape and vulnerable. The difficulty here is that I

cannot find any basis for a determination of damages. The fact that two individuals, creditors, incidentally, and hence particularly interested in defendants' success, were willing to purchase stock–producing only a third of the capital which plaintiffs might reasonably need–does not, in my opinion, put an ascertainable value on a yet–to–be–established manufacturing business other than a speculative one. Especially must this be so when McLean had no manufacturing expertise. I can accordingly only find damages in the nominal amount of one dollar.

### Attorneys' Fees

Plaintiffs have sought to maintain a now known invalid patent, and having sued for infringement of a second which they knew was not infringed, I find the action exceptional within the meaning of 35 U.S.C. § 285, and award attorneys' fees to defendants, to include the First Counterclaim.[5] Counsel shall submit a detailed statement within 20 days, and plaintiffs may have 10 days to respond. *See Furtado v. Bishop*, 1 Cir., 1979, 604 F.2d 80, 98, *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672. The complaint is dismissed. On the First Counterclaim, judgment of invalidity of both patents; on the Third Counterclaim, judgment for plaintiffs in counterclaim for one dollar; the Second and Fourth Counterclaims are dismissed. Defendants, plaintiffs in counterclaim, shall recover all costs except those, if any, shown attributable exclusively to the Second Counterclaim.

---

4. I find that the reporter erred in omitting Meyer's affirmative answer to the first question on T. 2–36. Had he not made it I would not have accepted the ensuing exhibits.

5. Defendants have not briefed their Mass.G.L. c. 93A counterclaim. I hold it abandoned, but remark, for reasons not necessary to pursue,

that fees thereunder would appear to parallel the First Counterclaim, since there was no affirmative recovery. *Cf. Levy v. Bendetson,* ―― Mass.App. ――, 1978 Mass.App.Adv.Sh. 888, 379 N.E.2d 1121. No fees, of course, on the Second and Third Counterclaim.