**HART–CARTER COMPANY, a corporation,**

**and**

**CEA Carter-Day Company, a corporation, Plaintiffs,**

**v.**

**J.P. BURROUGHS & SON, INC., a corporation, Defendant.**

**No. 76–40143.**

United States District Court, E.D. Michigan, S.D. Flint.

Oct. 27, 1986.

Nicholas L. Coch, New York City, John T. Lindholm, Flint, Mich., Roger W. Herrell, Philadelphia, Pa., for plaintiffs.

---

Richard J. Smith, Smith & Brooker, P.C., H. Woodruff Turner, Pittsburgh, Pa., Charles W. Rummler, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Plaintiffs Hart-Carter Company and CEA Carter-Day Company have moved to Amend or Alter Previously Entered Judgment pursuant to Rule 59, Fed.R.Civ.P. The motion is based on the claim that treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15 for a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, cannot be awarded absent appropriate findings supported by evidence as to the relevant market, ability or attempt to control. Stated conversely as plaintiffs have: fraudulent procurement and attempted enforcement of a patent does not constitute a per se violation of the antitrust laws.

The defendant J.P. Burroughs & Son, Inc. apparently recognizing that the way Hart-Carter states the issue, if accepted, is fatal to the trebling of damages earlier authorized by the Court, responds by arguing that the Court did not apply a per se rule of antitrust violation for simple patent fraud, but rather did define the market as "the gravity flow, grain dryers which use air recirculation and air reversal." Of course, Burroughs points to nothing more in the record—that is, nothing as to market share, market power or attempts to control or monopolize.

It is indeed true as Hart-Carter states that Burroughs deliberately failed to introduce any evidence at trial to prove a relevant market or market control apparently relying on a per se rule.*

The issue then is clear: Is there a per se rule? If not, there is insufficient evidence to support damage-trebling and the motion should be granted.

* It may be true that Burroughs was really only seeking attorney's fees and costs rather than

In authorizing trebling the Court relied on the 1977 Sixth Circuit decision in *Kearney & Trecker Corp. v. Cincinnati Milacron, Inc.,* 562 F.2d 365. In reviewing that case and the Seventh Circuit case of *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.,* 452 F.2d 579 (1971), the Court is convinced that they do not support a per se rule and that it was error to treble in the absence of evidence-supported findings as to market and market control and/or attempts to control the market—that is, Sherman Act, § 2 findings.

The following quotes from these two and several other cases and comments in relation thereto are the basis for the conclusion that there is no per se rule. In *Giddings,* the Court said:

Two related questions remain. Defendant contends that it should recover its attorneys' fees pursuant to 35 U.S.C. § 15.

■ The wrongful acquisition of monopoly power is prohibited by § 2 of the Sherman Act. The parties have stipulated that the relevant market is multifunction machine tools with automatic tool changers. Since plaintiff controls only about one-third of that market, it has not achieved monopoly status *See United States v. Aluminum Co. of America,* 148 F.2d 416, (2nd Cir.1945). Plaintiff's actual position in the industry is not, however, the sole test of violation of § 2. By condemning attempts to monopolize, that section directs itself against dangerous probabilities as well as the completed result.

■ A reliable or accurate measure of the actual likelihood that plaintiff would have achieved monopoly status if Beall's wrongful conduct had never been disclosed is, of course, not possible. However, we do not understand the 'dangerous probability' test to involve an evaluation of the actual likelihood that an attempt would have succeeded if not frustrated by an intervening event. Rather, it requires an appraisal of the alleged

trebling.

offender's ability to achieve the forbidden result, his intent, and the nature of his overt actions. In an antitrust context we must consider the firm's capacity to commit the offense, the scope of its objective, and the character of its conduct. The ultimate concern is the firm's actual or threatened impact on competition in the relevant market.

Plaintiff's size, representing one-third of the industry, was 'impressive.' *See United States v. Columbia Steel Co.,* 334 U.S. 495, 533, 68 S.Ct. 1107 [1127], 92 L.Ed. 1533. At least one significant competitor was a licensee under the Brainard patent. Plaintiff's patent position was fortified by its ownership of Morgan. Its sale and license arrangements were highly profitable. Clearly plaintiff was a firm with the capacity to make a serious attempt to acquire monopoly status.

Plaintiff cannot deny that it intended to acquire the power to exclude competition from the portion of the market described in the broad claims of the twice reissued Brainard patent. A competitor described those claims as broad enough to cover '... not only every tool changing system now in use, but also every tool changing system that might be conceived in the future.' We need not accept that description to recognize that exclusive control of the broad concepts encompassed by these claims, when added to the firm's other attainments (including its acquisition of Morgan and the products of its own ingenuity), would endanger the competitive process. Fulfillment of its objectives would have significantly enhanced its market position.

■ Thus, the uncontradicted evidence establishes plaintiff's capacity to commit the offense, its intent to acquire the power to exclude competition from a significant share of the market, and its use of predatory means to accomplish its purpose. In *Walker* the Court held that the enforcement of a fraudulently procured patent would give rise to a § 2 violation if the exclusionary power of the illegal patent claim in the relevant market for the product involved exceeded accepted antitrust criteria. Since we find the same objection to the procurement of a patent by violation of conflict of interest principles as by fraud, under our appraisal of the exclusionary power of the Brainard reissue claims, that holding persuades us that plaintiff has violated § 2 of the Sherman Act.

Thus, it is clear that an independent Section 2, Sherman Act violation must be established.

In the *Milacron* case the Sixth Circuit said:

> The parties in the *Giddings & Lewis* case stipulated as to the relevant market and the court of appeals held that the requirements for a finding of violation of Section 2 of the Sherman Act had been met. The case was remanded for a determination by the district court of whether *Giddings & Lewis* has sustained damages by reason of the antitrust violations.

Thus, the Sixth Circuit clearly was aware of what the Seventh Circuit held and the principle upon which it was based. They then analyzed the case before it in the light of that principle and the evidence in the record that supported it.

■ K & T further contends that Milacron failed to carry its burden of establishing the relevant market and that the district court made no findings, but merely adopted the Seventh Circuit's determination of the relevant market in *Giddings & Lewis,* which was based on a stipulation. In *Walker Process, supra,* 382 U.S. at 177, 86 S.Ct. at 350, the Supreme Court wrote:

> To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would then be necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure Food Machinery's ability to lessen or destroy competition.

Though the district court did find the relevant market to be the same as that stipulated in *Giddings & Lewis*, it did not do so by merely adopting the Seventh Circuit's finding. Witnesses testified directly on this issue on the present case and there is evidence which supports the determination of the district court. It was not error to reject K & T's contention that the relevant market is the market for all multi-function machine tools, whether equipped with automatic tool changers or not. While the broader market of multi-function machine tools is recognized in the industry, the proof in this case clearly supports the finding that a narrower market exists for such machinery equipped automatic tool changers. ■ It is also contended by K & T that Milacron failed to show a 'dangerous probability' that K & T would achieve a monopoly or that it had a specific intent to monopolize. Ownership of a patent has been held to establish at least *prima facie* evidence of market control. *See Standard Oil Co. v. United States*, 337 U.S. 293, 307, 69 S.Ct. 1051 [1058], 93 L.Ed. 1371 (1949). Even so, *Walker Process* requires an appraisal of the exclusionary power of an illegal patent claim in terms of the relevant market. The district court made such an appraisal and made specific findings that K & T had the capacity for a serious attempt to monopolize the relevant market and that it could not 'deny that it intended to acquire the power to exclude competition from the portion of the market described in the broad claims of the twice reissued Brainard patent....' In light of the evidence it cannot be said that these findings are clearly erroneous.

Thus, it is clear that the Sixth Circuit has never authorized a per se rule.

The holding in *Walker Process Equipment Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), was relied upon by the Sixth Circuit in *Milacron*. *Walker Process* more than merely suggests the principle accepted by both the Sixth and Seventh Circuits in both of the *Kearney & Trecker* cases and by the Federal Circuit in *American Hoist & Derrick Co. v. Sowa*, 725 F.2d 1350 (1984).

■ Walker's counterclaim alleged that Food Machinery obtained the patent by knowingly and willfully misrepresenting facts to the Patent Office. Proof of this assertion would be sufficient to strip Food Machinery of its exemption from the antitrust laws. By the same token, Food Machinery's good faith would furnish a complete defense. This includes an honest mistake as to the effect of prior installation upon patentability—so-called 'technical fraud.'

■ To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would then be necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure Food Machinery's ability to lessen or destroy competition. It may be that the device—knee-action using diffusers—use in sewage treatment systems does not comprise a relevant market. There may be effective substitutes for the device which do not infringe the patent. This is a matter of proof, as is the amount of damages suffered by Walker.

■ As respondent points out, Walker has not clearly articulated his claim. It appears to be based on a concept of per se illegality under § 2 of the Sherman Act. But in these circumstances, the issue is premature. As the Court summarized in *White Motor Co. v. United States*, 372 U.S. 253, 9 L.Ed.2d 738, 83 S.Ct. 696 (1963), the area of per se illegality is carefully limited. We are reluctant to extend it on the bare pleadings and absent examination of market effect and economic consequences.

■ However, even though the per se claim fails at this stage of litigation, we believe that the case should be remanded for Walker to clarify the asserted violations of § 2 and to offer proof thereon. The trial court dismissed its suit not be-

cause Walker failed to allege the relevant market, the dominance of the patented device therein, and the injurious consequences to Walker of the patent's enforcement, but rather on the ground that the United States alone may 'annul or set aside' a patent for fraud in procurement. The trial court has not analyzed any economic data. Indeed, no such proof has yet been offered because of the disposition below. In view of these considerations, as well as the novelty of the claim asserted and the paucity of guidelines available in the decided cases, this deficiency cannot be deemed crucial. Fairness requires that on remand Walker have the opportunity to make its § 2 claims more specific, to prove the alleged fraud, and to establish the necessary elements of the asserted § 2 violation.

Reversed and remanded.

Mr. Justice Harlan, concurring.

I join the Court's opinion. I deem it appropriate, however, to add a few comments to what my Brother Clark has written because the issue decided is one of first impression and to allay possible misapprehension as to the possible reach of this decision.

We hold today that a treble-damage action for monopolization which, but for the existence of a patent, would be violative of § 2 of the Sherman Act may be maintained under § 4 of the Clayton Act if two conditions are satisfied: (1) the relevant patent is shown to have been procured by knowing and willful fraud practiced by the defendant on the Patent Office or, if the defendant was not the original patent applicant, he had been enforcing the patent with knowledge of the fraudulent manner in which it was obtained; and (2) all the elements otherwise necessary to establish a § 2 monopolization charge are proved. Conversely, such a private cause of action would *not* be made out if the plaintiff: (1) showed no more than invalidity of the patent arising, for example, from a judicial finding of 'obviousness' or from other factors sometimes compendiously referred to as 'technical fraud'; or (2) showed fraudulent procurement, but no knowledge thereof by the defendant; or (3) failed to prove the elements of a § 2 charge even though he has established actual fraud in the procurement of the patent and the defendant's knowledge of that fraud.

It is well also to recognize the rationale underlying this decision, aimed of course at achieving a suitable accommodation in this area between the differing policies of the patent and antitrust laws. To hold, as we do, that private suits may be instituted under § 4 of the Clayton Act to recover damages for Sherman Act monopolization knowingly practiced under the guise of a patent procured by deliberate fraud, cannot well be thought to impinge upon the policy of the patent laws to encourage inventions and their disclosure. Hence, as to this class of improper patent monopolies, antitrust remedies should be allowed room for full play. On the other hand, to hold, as we do not, that private antitrust suits might also reach monopolies practiced under patents that for one reason or another may turn out to be avoidable under one or more of the numerous technicalities attending the issuance of a patent, might well chill the disclosure of inventions through the obtaining of a patent because of fear of the vexations or punitive consequences of treble-damage suits. Hence, this private antitrust remedy should not be deemed available to reach § 2 monopolies carried on under a nonfraudulently procured patent.

These contrasting factors at once serve to justify our present holding and to mark the limits of its application.

Moreover, Justice Harlan's separate concurring opinion clearly negates the existence of any per se rule.

The Court then concludes that no proofs were offered to support a Section 2 viola-

tion and thus no Section 2 findings were authorized or made.**

█ The conclusion is inescapable that trebling was not authorized on this record and thus the motion to Amend or Alter the Judgment must be GRANTED.

Inasmuch as the judgment has been amended by reducing it by two thirds to correct for improper trebling, the issue remaining concerning bond pending appeal has changed and the current filings are not pertinent to a judgment only one third as large as when they were filed. In the context of the amended judgment, any issues regarding bonding on appeal must be presented anew.

█ As to the award of attorneys' fees, it appears that an attorney's fee allowable under 35 U.S.C. § 285 is a reasonable attorney's fee and not merely the attorneys' fees paid by Burroughs. Accordingly, the acceptance of the attorneys' fees and costs paid by Burroughs was likewise erroneous. Hence, that portion of the judgment setting the amount is likewise vacated. The parties are directed to meet within 30 days from the date hereof and provide within 10 days thereafter a stipulation related to the portion of attorneys' fees agreed upon and that which is in dispute; also said stipulation must set forth what discovery Hart-Carter wishes, the basis therefor and a schedule for completion. Burroughs shall respond as to which discovery it objects, the basis for the objection and its suggested schedule.

IT IS SO ORDERED.

---

** The language of the court in its original opinion at p. 1347 "... therefore it is found that the relevant market is the gravity flow, grain dryers which use air recirculation and reversal ..."—is unfortunate for it inappropriately made it appear to be a Section 2 finding. At that time, the Court was not concerned with Section 2 findings as it was improperly reading *Milacron* as authorizing a per se ruling. The statement was correct but it was not a Section 2 finding. It was merely referring to the direct product competition with which the case dealt.