EAGLE SNACKS, INC., Plaintiff,

v.

OUR COMPANY, INC.,
et al., Defendants.

Civ. No. 93–2–P–C.

United States District Court,
D. Maine.

July 29, 1993.

Jeffrey M. White, Christopher P. Stief, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, Peter E. Moll, Eberhard W. Pfaller, Jr., Howrey & Simon, Washington, DC, for Eagle Snacks, Inc.

Charles R. Kadish, Portland, ME, James B. Barns, Andrew W. Sparks, Drummond & Drummond, Portland, ME, for Our Company, Inc.

James B. Barns, Andrew W. Sparks, Drummond & Drummond, Portland, ME, for Dane Somers.

William P. Shumaker, Yarmouth, ME, for Cynthia Doten.

### MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

In this ten-count action, Plaintiff Eagle Snacks, Inc. ("Eagle") seeks damages from Defendants Our Company, Inc. ("OCI"), Dane Somers, and Cynthia Doten for damages arising generally from OCI's alleged breach of a distribution agreement between the two parties. In her Answer (Docket No.

24), Defendant Cynthia Doten ("Doten") counterclaims against Eagle, alleging tortious interference with Doten's contractual relations with OCI. Currently before the Court is Eagle's Motion to Dismiss Doten's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 29), with supporting memorandum (Docket No. 30). Doten opposes this motion (Docket Nos. 35 and 36).

On a motion to dismiss, the allegations of the counterclaim are taken as true. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965). The standard for dismissal under Federal Rule of Civil Procedure 12(b)(6) is whether the counterclaimant "can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Thus, "if a trial court accepts [counterclaimant's] facts and can envision no reasonable application of the law that would entitle [her] to relief, the court may rightly dismiss the case." *Finnern v. Sunday River Skiway Corp.*, 984 F.2d 530, 534 (1st Cir. 1993).

## FACTS

Doten is the complaining party on the counterclaim; thus, the Court will accept Doten's statement of facts, as pleaded in the counterclaim, for purposes of its analysis of this 12(b)(6) motion. Those facts are as follows:

On or about September 30, 1991, Doten entered into a written employment agreement ("the Agreement") with OCI. The Agreement required Doten to work fulltime for OCI for a period of five years, at $26,000 per year, plus bonuses and other forms of compensation to be paid at the discretion of the Board of Directors and/or shareholders of OCI. The Agreement was to be in effect from October 1, 1991, through September 30, 1996.

Pursuant to such Agreement, Doten began working for OCI in October 1991. In January 1993, in an effort to intimidate OCI into paying money to Eagle, Eagle breached its contractual agreements with OCI. As a result of Eagle's breach, there was little or no work for Doten at OCI after January 4, 1993. Under the terms of the Agreement, OCI was required to keep Doten on the payroll until September 30, 1996, or to pay her the full amount of salary she would have collected through that date. Because Doten was precluded from seeking other full-time employment under the Agreement, she negotiated the termination of her Agreement with OCI. As consideration for releasing OCI from the Agreement, Doten was paid $48,750 (approximately one-half the amount of pay to which she was entitled under the Agreement).

Doten now seeks compensatory and punitive damages, claiming that Eagle's actions constitute a tortious interference with Doten's contractual relations with OCI and her ongoing prospective advantage of secure and continuing employment.

## ANALYSIS

Maine law recognizes interference with an existing employment or contract relationship as an actionable tort. *MacKerron v. Madura*, 445 A.2d 680, 682 (Me.1982). Damages may be sought "wherever a person, by means of fraud or intimidation, procures, either the breach of a contract or the discharge of a plaintiff, from an employment, which but for such wrongful interference, would have continued." *MacKerron*, 445 A.2d at 683. Thus, under Maine law, an actor is liable if, (1) using fraud or intimidation, such actor (2) procures a breach of contract or discharge from employment (3) which otherwise would not have occurred.

In the case at bar, Doten has failed to allege facts which, if proven, would entitle her to relief. The facts as alleged fail to show that Doten's contract was breached or that she was discharged from her employment. Instead, Doten states that she "*negotiated* with OCI a termination of her [employment] Agreement" after the workload decreased in January 1993. (Doten's Answer, Counterclaim, and Jury Demand (Docket No. 24) at 12, ¶ 7) (emphasis added). The import of such "negotiations" conflicts

with Doten's characterization of the ensuing termination of the Agreement as a "breach of contract" or "discharge" under Maine law. Neither breach of contract nor discharge is, for present purposes, a negotiable construct.

Furthermore, under the terms of the Agreement between OCI and Doten, Doten has not stated facts sufficient to prove breach of contract. The Agreement specifically outlines only five available means for termination of the contract after the first ninety days. The options are:

1) OCI may terminate this agreement by giving notice to employee that he/she has failed to perform the agreed upon duties in a satisfactory manner and/or for violation of any of the terms of the agreement. . . .

2) OCI and employee may by mutual consent agree to terminate this agreement for any reason. Such consent must be in writing and signed by both parties.

3) Employee may terminate this agreement by giving OCI notice of failure of OCI to perform its duties as obligated under this agreement or of failure of OCI to properly compensate employee as specified in this agreement. . . .

[4] [1] Employee may terminate .at any time with OCI and that shall have the effect of terminating this agreement between the parties. Under such a termination, OCI shall be under no obligation to compensate employee in any way after such termination. . . .

[5] OCI may terminate this agreement at any time for any reason by paying to employee an amount equal to the remainder of the salary due to be paid to the employee under the terms of the agreement. Bonuses, profit sharing and/or other benefits would not be paid after such termination. . . .

Employment Agreement at 2, Attached to Doten's Answer, Counterclaim, and Jury Trial Demand (Docket No. 24). Doten alleges that the termination of her Agreement with OCI constitutes breach of contract. However, mutual negotiations regarding the termination of .the Agreement, such as those between Doten and OCI, were clearly contemplated by, and allowed under, the Agreement. Termination option number 2 under the Agreement directly provides "OCI and employee may *by mutual consent* agree to terminate this agreement for any reason." Employment Agreement at 2, Attached to Doten's Answer, Counterclaim, and Jury Trial Demand (Docket No. 24) (emphasis added). Doten does not allege that she did not consent to the termination of the Agreement. Therefore, the termination of the Agreement was within the terms of the contract and such termination cannot constitute "breach of contract" or "discharge" as required under Maine law for a tortious interference with contractual relations claim. .

A consideration of the element of intent further solidifies this Court's ruling. The Law Court has written that, as a general rule, "a tort to the person of one individual does not make the tortfeasor liable to another individual merely because the injured person was under a contract with that other person, *unless the wrong is done with intent to affect the contractual relations.*" *Sawyer v. Bailey,* 413 A.2d 165, 168 (Me.1980) (emphasis added). Applying this general rule to the case at bar, Eagle is not liable to Doten for the effects of its breach of contract with OCI merely because Doten was under contract with OCI, *unless Eagle breached its contract with OCI with the intent of affecting the contract between OCI and Doten.* However, Doten does not allege that Eagle acted with the intent to affect the contractual relations between Doten and OCI. Rather, Doten alleges that "Eagle knew or should have known that its actions would have the effect of destroying jobs, including Doten's, at OCI." Doten's Answer, Counterclaim, and Jury Trial Demand (Docket No. 24) at 12, ¶ 7. Given the facts at hand, such broad allegations are not enough to state a claim for interference with contractual relations under Maine law.

Accordingly, it is *ORDERED* that Plaintiff's Motion to Dismiss Doten's Counterclaim

---

1. The Court notes that the Employment Agreement misnumbers the termination options (two number 3s followed by a number 4). Hence, for purposes of clarity, this Court will renumber the options as they should have been, if numbered correctly (that is, 1–5).

**4**

for Failure to State a Claim for Which Relief May be Granted be, and it is hereby, *GRANTED.*

So *ORDERED.*