MAYER, Circuit Judge,
dissenting.
Because Hydril did not have standing to bring either an antitrust claim with respect to the finished drill pipe market, or a claim for infringement of U.S. Reissue Patent No. 34,467, I respectfully dissent from the majority’s decision to reverse the district court on those two issues.
A patent exempts its holder from the general prohibition against monopolies. Walker Process Equip., Inc. v. Food Mach. & Chem. Co., 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) (citing Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 816, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)). However, Walker Process protects against the misuse of a fraudulent patent by “stripping” the paten-tee of this exemption and opening the door to a potential antitrust claim. Id. Without the protection of this antitrust exemption, the holder of a fraudulently obtained patent will be liable for treble damages if its actions created a “reasonable apprehension” that it intended to enforce the patent against either the plaintiff or the plaintiffs customers. See Unitherm Food Sys., Inc. *1354 v. Swift-Eckrich, Inc., 375 F.3d 1341, 1358 (Fed.Cir.2004), rev’d on other grounds, 546 U.S. 394, 126 S.Ct. 980, 163 L.Ed.2d 974 (2006). To determine whether such a reasonable apprehension exists, it is “necessary to appraise the exclusionary power of the illegal patent ... in terms of the relevant market for the product involved.” Walker Process, 382 U.S. at 177, 86 S.Ct. 347. The exclusionary power of any United States patent, however, is confined to the United States, including its territories and its possessions. 35 U.S.C. §§ 100(c), 154(a)(1). Thus, as a matter of both law and logic, a “reasonable apprehension” of patent enforcement cannot exist where neither the plaintiff nor any of its customers may be subject to the exclusionary power of a patent.
That is the case here. Despite being given two opportunities to amend its complaint, Hydril has not alleged that either it or its customers participated, attempted to participate, or intended to participate in the finished drill pipe market within the United States. Rather, Hydril has alleged only that it competes with Grant Prideco in this market “outside the United States.” Second Amend. Compl. ¶ 15 (“Hydril does not manufacture raw pipe. However, outside the United States, Hydril sometimes acts as ... a distributor of finished drill pipe .... ”); id. ¶ 17 (“[Ojutside the United States, Hydril competes with Grant Prideco as a distributor of finished drill pipe directly to end-users.”); id. ¶ 28 (alleging that Hydril sold finished drill pipe in 2001 to Azerbaijan International Oil Company, and submitted a quote to one potential customer in each of Dubai, Australia, Russia, Indonesia, and Brazil, but making no mention of any participation or intent to participate in the finished drill pipe market within the United States). Because Hydril has not alleged that it competes in the finished drill pipe market within the United States, it could not have had a “reasonable apprehension” that Grant Prideco would — or could — enforce its U.S. Patent No. 6,244,631 against Hy-dril in the finished drill pipe market.
This is a question of law that should be resolved without any further ado, especially since the instant appeal is from a Rule 12(b)(6) motion to dismiss for failure to state a claim. It should be decided on the sufficiency of the pleadings, and is not dependant on the factual record of the case. Accordingly, rather than punt this question of law back to the district court, we should hold that Hydril does not have standing to bring a Walker Process antitrust claim with respect to the finished drill pipe market because it admittedly only competes with Grant Prideco in that market “outside the United States.”
We should also affirm the dismissal of Hydril’s claim that the '467 patent was infringed. The Merger Agreement clearly limits the parties’ remedies to an action for breach of contract or specific performance. Merger Agreement, § 12.12(a). The majority says that the language of section 12.12(a) is irrelevant because the Merger Agreement and the associated licenses have already been terminated by breach. However, the majority explicitly admits that whether the Merger Agreement has been breached remains an open question. Ante at 1352; see also Second Amend. Compl. ¶ 84 (“Hydril seeks a declaratory judgment that Grant Prideco’s [actions were] a material breach of the Wedge Agreement and ended Grant Prideco’s” rights under the Agreement.); id. ¶ 85 (making allegations similar to ¶ 84). They also implicitly admit this point by vacating the dismissal of the state law claims for a declaratory judgment of breach sought in paragraphs 84 and 85 of Hydril’s Second Amended Complaint. Therefore, the majority’s holding that Hydril may sustain a claim for patent infringement because the Merger Agreement has previously been *1355 terminated by breach is discordant with Hydril’s own pleadings and position.
Section 12.12 clearly says that the parties agreed to waive “any and all rights and remedies relating to this Agreement and the transactions contemplated hereby sounding in,” inter alia, “tort, ... statute, ... or injury outside this agreement.” They also clearly agreed that “[t]he sole basis for any right or remedy by any party against any other party ... relating to this Agreement and the transactions contemplated ... thereby is a breach of contract (or specific performance) action for breach of this Agreement.” Patent rights are statutory rights, and a claim for patent infringement sounds in tort; the right to sue for such injuries was waived by the Merger Agreement. Moreover, these rights “relate to” the Merger Agreement, and are, in fact, the reason the agreement was consummated in the first place. Accordingly, the district court correctly dismissed Hydril’s infringement action for failure to state a claim because its exclusive remedy under the Merger Agreement lies, if at all, in an action for breach of contract.