# United States Court of Appeals for the Federal Circuit

---

**RITZ CAMERA & IMAGE, LLC,**
*Plaintiff-Appellee,*

v.

**SANDISK CORPORATION,**
*Defendant-Appellant.*

---

2012-1183

---

Appeal from the United States District Court for the Northern District of California in Case No. 10-CV-2787, Judge Jeremy Fogel.

---

Decided: November 20, 2012

---

JOSEPH S. HALL, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., of Washington, DC, argued for plaintiff-appellee. With him on the brief were STEVEN F. BENZ, WILLIAM J. RINNER, and ALEXANDER S. EDELSON. Of counsel on the brief was R. STEPHEN BERRY, Berry Law PLLC, of Washington, DC.

RAOUL D. KENNEDY, Skadden, Arps, Slate, Meagher & Flom LLP, of Palo Alto, California, argued for defendant-appellant. With him on the brief were DAVID W. HANSEN,

JAMES P. SCHAEFER, TRAVIS M. JENSEN, and JOSHUA M. TEMPLET.

KRISTEN C. LIMARZI, Attorney, Antitrust Division, United States Department of Justice, of Washington, DC, argued for amici curiae United States, et al. With her on the brief were JOSEPH F. WAYLAND, Acting Assistant Attorney General, and CATHERINE G. O'SULLIVAN, Attorney. Of counsel on the brief were WILLARD K. TOM, General Counsel, and JOHN F. DALY, Deputy General Counsel, Federal Trade Commission, of Washington, DC.

J. DOUGLAS RICHARDS, Cohen Milstein Sellers & Toll PLLC, of New York, New York, for amici curiae American Antitrust Institute, et al. With him on the brief was MICHAEL B. EISENKRAFT.

LESLIE B. DUBECK, Assistant Solicitor General, State of New York, of New York, New York, for amici curiae State of New York, et al. With her on the brief were ERIC T. SCHNEIDERMAN, Attorney General, BARBARA D. UNDERWOOD, Solicitor General, C. SCOTT HEMPHILL, Chief, Antitrust Bureau, STEVEN C. WU, Assistant Solicitor General, and SAAMI ZAIN, Assistant Attorney General of Counsel.

MICHAEL A. CARRIER, Rutgers School of Law–Camden, of Camden, New Jersey, for amici curiae 27 U.S. Antitrust, Intellectual Property, and Innovation Professors.

_____

Before BRYSON, DYK, and MOORE, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This case comes to us on an interlocutory appeal from the United States District Court for the Northern District

of California. The certified question concerns the limits on standing to bring so-called *Walker Process* antitrust claims. The Supreme Court in *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172 (1965), held that antitrust liability may attach when a party uses a patent to obtain or preserve a monopoly if the patent was procured through intentional fraud on the Patent and Trademark Office ("PTO"). The question in this case is whether an antitrust action against the owner of a patent, based on the *Walker Process* theory of liability, can be brought by a direct purchaser of goods that are protected by the patent, even if the purchaser faces no threat of an action for patent infringement and has no other basis to seek a declaratory judgment holding the patent invalid or unenforceable. We hold that the district court was correct to rule that a direct purchaser is not categorically precluded from bringing a *Walker Process* antitrust claim, even if it would not be entitled to seek declaratory relief against the patentee under the patent laws.

I

Defendant SanDisk allegedly controls about three-quarters of the market for NAND flash memory. Flash memory is a computer chip that can be erased and reprogrammed; NAND is a particular type of flash memory. The capacity of NAND flash memory to store large amounts of data and to rewrite the contents of that data has led to its widespread use in consumer products such as digital cameras, mobile phones, and USB drives. SanDisk holds patent rights needed to make NAND products. With those patents, SanDisk manufactures and sells flash memory products and also licenses the technology to other manufacturers. Retailers such as plaintiff

Ritz Camera & Image, LLC, purchase flash memory products from SanDisk and its licensees.

In June 2010, Ritz filed suit on behalf of itself and a class of direct purchasers of NAND flash memory, alleging that SanDisk had violated Section 2 of the Sherman Act, 15 U.S.C. § 2. The complaint alleged that SanDisk had fraudulently procured two patents central to its flash memory business—U.S. Patent Nos. 5,172,338 and 5,991,517 ("the '338 and '517 patents")—by failing to disclose known prior art and making affirmative misrepresentations to the PTO. Ritz further alleged that SanDisk established its monopoly position by enforcing those patents against its competitors and by threatening the competitors' customers. Ritz contends that those actions have caused direct purchasers to pay inflated, supracompetitive prices for NAND flash memory products.

SanDisk moved to dismiss the complaint. Among its arguments, SanDisk asserted that Ritz lacked standing to bring a *Walker Process* antitrust claim based on the invalidity or unenforceability of SanDisk's patents, because Ritz faced no threat of an infringement action and had no other basis to bring a declaratory judgment action challenging the patents.[1]

---

[1]    The Supreme Court in *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), rejected our "reasonable apprehension of suit" test for declaratory judgment standing and held that the proper test is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007). Ritz does not claim that it could have brought a declaratory judgment action against SanDisk seeking relief under the patent laws.

The district court rejected SanDisk's argument. *Ritz Camera & Image, LLC v. SanDisk Corp.*, 772 F. Supp. 2d 1100, 1103-05 (N.D. Cal. 2011). The court acknowledged that *Walker Process* claims normally are brought by competitors of the patentee as counterclaims in patent infringement actions. However, the court noted that the Supreme Court's decision in *Walker Process* "places no limitation on the class of plaintiffs eligible to bring [such claims]." *Id.* at 1105. Moreover, the court was not persuaded by SanDisk's contention that expressly authorizing direct purchasers to bring *Walker Process* claims "could result in an avalanche of patent challenges" because such claims are "rare" and because the Supreme Court rejected the same argument in *Walker Process*. *Id.* In the course of its opinion, the court pointed out that allegations of fraud relating to the '338 and '517 patents had survived a motion for summary judgment in a different litigation, which "raise[s] at least some question as to the validity of the subject patent[s]." *Id.*

SanDisk petitioned for interlocutory review of the district court's ruling pursuant to 28 U.S.C. § 1292(b) and (c). The district court and this court granted SanDisk's request.

II

SanDisk's appeal is limited to a single question: Whether direct purchasers who cannot challenge a patent's validity or enforceability through a declaratory judgment action (and have not been sued for infringement, and so cannot assert invalidity or unenforceability as a defense in the infringement action) may nevertheless bring a *Walker Process* antitrust claim that includes as one of its elements the need to show that the patent was procured through fraud. SanDisk contends that allowing

parties such as Ritz to use a *Walker Process* antitrust lawsuit to challenge patents would represent an unjustifiable expansion of the *Walker Process* doctrine and would undermine well-recognized limitations on standing to bring a declaratory judgment action challenging a patent. We disagree.

*Walker Process* set forth two conditions for antitrust liability based on the fraudulent procurement of a patent. First, the plaintiff must show that the defendant procured the relevant patent by knowing and willful fraud on the PTO or (in the case of an assignee) that the defendant maintained and enforced the patent with knowledge of the fraudulent manner in which it was obtained. Second, the plaintiff must prove all the elements otherwise necessary to establish a Sherman Act monopolization charge. *Walker Process*, 382 U.S. at 174, 176-77; *see also id.* at 179 (Harlan, J., concurring). With the first condition, the Court made clear that the invalidity of the patent was not sufficient; a showing of intentional fraud in its procurement was required. *Id.* at 176-77; *id.* at 179 (Harlan, J., concurring). With the second condition, the Court incorporated the rules of antitrust law generally. As Justice Harlan stated in his concurring opinion, "as to this class of improper patent monopolies, antitrust remedies should be allowed room for full play." *Id.* at 180 (Harlan, J., concurring). The "full play" of antitrust remedies encompasses the standing requirements that apply in the antitrust setting, *see, e.g.*, *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537-46 (1983); *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009), including the recognition that direct purchasers are not only eligible to sue under the antitrust laws, but have been characterized as "preferred" antitrust plaintiffs, *e.g.*, *Big Bear Lodging Ass'n v.*

*Snow Summit, Inc.*, 182 F.3d 1096, 1102 n.4 (9th Cir. 1999).

Nothing in *Walker Process* supports SanDisk's argument that the rules governing standing to bring patent validity challenges should be imported into an antitrust case simply because one element of the antitrust cause of action requires proof of improper procurement of a patent. In fact, the Supreme Court in *Walker Process* rejected an argument closely analogous to SanDisk's argument here. The Court stated that it found no merit in the proposition that rules defining who may bring suit "to cancel or annul a patent" should also dictate the boundaries of antitrust standing. *Walker Process*, 382 U.S. at 175-76. Notwithstanding the fact that "one of its elements is the fraudulent procurement of a patent," the Court explained, an antitrust claim under the Clayton Act is not a claim under the patent laws. *Id.* at 176. Rather, "the gist of [the antitrust] claim is that since [the defendant] obtained its patent by fraud it cannot enjoy the limited exception to the prohibitions of § 2 of the Sherman Act, but must answer under that section and § 4 of the Clayton Act in treble damages to those injured by any monopolistic action taken under the fraudulent patent claim." *Id.* The Court did not suggest that the class of "those injured by any monopolistic action" should be limited to those within that class who would have standing to bring an independent challenge to the patents at issue.

In arguing that the right to bring a *Walker Process* claim should be governed by the standing requirements of the Declaratory Judgment Act rather than traditional antitrust standing requirements, SanDisk relies on the Court's statement in *Walker Process* that permitting a plaintiff to bring an antitrust claim based on a fraudulently procured patent "accords with . . . long-recognized

procedures." 382 U.S. at 176-77. Because that statement follows a brief survey of cases concerning patent validity disputes, SanDisk argues that it evinces the Court's intent to limit the class of potential antitrust plaintiffs to those who could contest a patent's validity directly. The quoted sentence, however, does not say what SanDisk claims. The context makes clear that the sentence in question simply explains that recognizing a cause of action for an antitrust claim based on a fraudulently procured patent is not inconsistent with patent law rules permitting challenges to patently validity or patent misuse. Nothing in that sentence, or elsewhere in the Court's opinion, suggests that the standing limitations on direct actions to challenge patent validity should be imported into antitrust actions predicated on fraudulently procured patents.

Noting the distinction between patent and antitrust actions drawn in *Walker Process*, this court and others have declined to apply limitations on patent invalidity suits to *Walker Process* antitrust actions. In *Hydril Co. v. Grant Prideco LP*, 474 F.3d 1344 (Fed. Cir. 2007), this court refused to apply the standing limitation on declaratory judgment actions challenging a patent's validity to the context of a *Walker Process* claim. *Id.* at 1350. Similarly, the Second Circuit has held that direct purchasers had standing to pursue their *Walker Process* claim despite the fact that, as purchasers, they could not directly challenge the patent's validity. *DDAVP*, 585 F.3d at 689-92.[2]

---

[2]    The Second Circuit "decline[d] to decide whether purchaser plaintiffs *per se* have standing to raise *Walker Process* claims," and held "only that purchaser plaintiffs have standing to raise *Walker Process* claims for patents that are already unenforceable due to inequitable conduct." *DDAVP*, 585 F.3d at 691-92. The district court in this case noted that claims of intentional fraud against

The D.C. Circuit has likewise allowed a *Walker Process* claim to proceed even though the patentee had disclaimed the patent and thus the plaintiff faced no risk of an infringement suit. *Oetiker v. Jurid Werke, GmbH*, 556 F.2d 1 (D.C. Cir. 1977). The rule urged by SanDisk—to limit *Walker Process* antitrust claimants to competitors who could bring a declaratory judgment action attacking a patent's validity—would conflict with all of those decisions.

SanDisk argues that allowing direct purchasers to bring *Walker Process* claims would authorize an intolerable end-run around the patent laws because parties unable to pursue invalidity claims could achieve the same result by way of a Sherman Act claim. We do not share SanDisk's concern. A *Walker Process* antitrust claim is a separate cause of action from a patent declaratory judgment action. It is governed by principles of antitrust law, and there is nothing novel about the fact that it includes as one of its elements the need to prove a violation that is not independently actionable between the same parties. *Walker Process* explained that while one of the elements of the antitrust claim is the fraudulent procurement of a patent, the action "does not directly seek the patent's annulment." 382 U.S. at 176. Ritz's claim likewise seeks relief under the antitrust laws; it does not directly seek to

the '338 and '517 patents had previously survived a motion for summary judgment in another case. We see no reason to limit the scope of *Walker Process* standing to cases in which the patents have been "tarnished" in another proceeding. *Walker Process* contains no such limitation, and applying such a requirement would have the undesirable effect of subjecting injured parties' claims to the litigation strategies of others. It would also be likely to generate unproductive wrangling over what counts as a sufficiently "tarnished" patent to support a *Walker Process* claim.

invalidate SanDisk's patents or render them unenforceable, even though that would likely be the practical effect if Ritz were to prevail on its *Walker Process* claim.

Moreover, as to SanDisk's assertion that granting standing to direct purchasers would trigger a flood of litigation and stem innovation, the Supreme Court rejected the same argument in *Walker Process* when it explained that "the interest in protecting patentees from 'innumerable vexatious suits' [cannot] be used to frustrate the assertion of rights conferred by the antitrust laws." 382 U.S. at 176. As the Court explained, *Walker Process* claims "deal only with a special class of patents, *i.e.*, those procured by intentional fraud," *id.*, and "cannot well be thought to impinge upon the policy of the patent laws to encourage inventions and their disclosure," *id.* at 180 (Harlan, J., concurring). Particularly in light of the demanding proof requirements of a *Walker Process* claim, we are not persuaded by SanDisk's "flood of litigation" argument.

In sum, *Walker Process* recognizes a clear distinction between claims that arise under the antitrust laws and those that arise under the patent laws. Because direct purchasers are generally permitted to bring antitrust actions, and because the *Walker Process* decision did not preclude purchasers from bringing this particular type of antitrust claim, we hold that Ritz's status as a direct purchaser gives it standing to pursue its *Walker Process* claim even if it could not have sought a declaratory judgment of patent invalidity or unenforceability.

**AFFIRMED**